[Civ. No. 8542. First Appellate District, Division One.—August 27, 1932.]

ALFRED SCHUDEL et al., Appellants, v. LILLY ALICE HERTZ, Respondent.

J. S. Hutchinson and Forrest H. Bailey for Appellants.

Henry E. Greer and Eric J. Rosenstirn for Respondent.

BEAUMONT, J., *pro tem.*—In 1915 Walter Rueger purchased certain lots of Muir Woods Park Subdivision Six in Marin County. These were part of what is known as the "Lapachet" property. In 1921 Joseph Mischke acquired other lots thereof, and later Alfred Schudel, Ernest Schudel and Gustav E. Kirchner became the owners of yet others of these lots. All of said Lapachet lots are adjacent to lot 53, designated as the "O'Hair" property, on the northeast. This last-mentioned lot fronts in a southeasterly direction on Marin View Avenue. Rueger acquired a strip ninety feet wide off the northeasterly portion of lot 53 and adjoining all said Lapachet lots. This strip was purchased in three separate parcels, the first thereof in August, 1919; the second in November, 1921, and the third in January, 1922. In 1922 Mischke acquired from Rueger the portion of the ninety-foot strip which adjoins his Lapachet lots, and in May, 1927, the Schudels and Kirchner jointly purchased the part adjacent to their Lapachet lots. In June, 1927, Lilly Alice Hertz, through purchase, acquired the Lapachet lots theretofore owned by Rueger as well as his remaining part of the ninety-foot strip. In March, 1928, Mrs. Hertz purchased from P. E. O'Hair Realty Company the remainder of lot 53. Later Mrs. Hertz fenced her property. Action was brought by Mischke, the Schudels and

Kirchner against Mrs. Hertz to quiet title to an easement for right of way across lot 53 to Marin View Avenue, a public highway. Judgment was for defendant, and from this plaintiffs appealed.

In appellants' opening brief easement is claimed on two grounds, to wit: under the provisions of section 1104 of the Civil Code and by prescription, but that brief contains no specification of errors and fails to point out any ground upon which the judgment should be reversed. This is referred to by respondent, and in appellants' reply brief certain alleged insufficiencies of evidence and erroneous conclusions are designated. Some of the grounds for reversal are indefinite, but we shall endeavor to consider all that are germane to the issue. Appellants contend that the evidence is overwhelmingly in favor of the allegations of the complaint. The question is not whether the evidence would have supported a decision in favor of appellants, but whether the decision which was made finds support in the evidence.

The evidence shows that all of the Lapachet property in question is very rough; that lot 53 was owned by P. E. O'Hair until it was transferred in June, 1922, to P. E. O'Hair Realty Company; that it consists largely of a grassy knoll, and that until fenced by respondent shortly before the commencement of this action, was uninclosed and uncultivated land of approximately three acres; that appellants and Rueger, their predecessor in interest, sometimes drove and walked upon and across lot 53 to reach their property, and at other times they arrived there by other ways. Appellants' testimony is that though access thereto was originally had by foot along the trails, it was later reached by the use of automobiles. Walter Rueger testified that before and at the time he completed the purchase of the parcels of lot 53 which comprise the ninety-foot strip, he drove across said lot to reach his own property over a well-defined road; that he continued to use this road until he disposed of his interest in the property; that he had claimed a right of way across said lot because Emile Lapachet had told him before he purchased the ninety feet that he (Rueger) was entitled to such right of way. Appellants testified that they used the above-mentioned road until a fence was erected by respondent. Doctor Gustav Kirchner, one of the appellants, testified regarding the roadway in question as follows: "Q.

Now at the time that you purchased Lots 159, 160 and 161, was there a road leading from that property to Marin View Avenue? A. There was a place where driving was done. It was practically around this hill, but it was not used every day; people up there usually are there only week ends. . . . Q. Well, you have described the character of the road across there when you first began to own it; later on was that road more definitely marked? A. When I first began to know it, it showed traces of having been worked some time before, but in this section in one winter the weeds grow so fast that the soil is quickly overgrown, but when I began to clear out the road there I had to make no measurement or not to make any guess at it. I simply followed what was evidently a road before, because it began to lead out in the level here and I followed that same way.'' Joseph Mischke, one of the appellants, testified as to the existence of the road in 1922. He was asked, ''And that road was well marked on the ground, was it?'' His answer was, ''It was marked enough that a person could not really miss it.''

In opposition to the foregoing, Emile Lapachet, who acted as agent of the grantor in the sale of the ninety-foot strip to Rueger, testified that the property in question, including the Lapachet lots, was located in what was known as a ''Hiker's Paradise''; that this property was sold for hillside cabin sites; that the subdivision in question was laid out for such purpose; that access was to be had over trails, and that the purchasers acquired their property with a view of reaching it by such means; that some years after the subdivision was so laid out the public generally began to use lot 53 for parking automobiles and for picnic purposes; that there were numerous automobile tracks in various portions of the lot, but there was at no time a road across the lot; that there was no definite line of travel leading from the property of appellants or their predecessor to Marin View Avenue. He denied that he had told Rueger that the latter was entitled to a right of way across lot 53, but testified that some months after Rueger had completed the purchase of the ninety-foot strip Rueger told him he would like to have a right of way across lot 53, and asked him (Lapachet) to interview O'Hair for the purpose of obtaining it. Wesley M. Nelson testified that he had a conversation with Rueger in the year 1927, while Rueger still owned part of

the property, and that Rueger then told him that he had no right of way across lot 53, and that he claimed none. Respondent testified that she was first upon the property in the early part of 1927, and that there was no roadway across lot 53 at that time; that appellant Kirchner told her he had no right of way over lot 53, and that he wrote her a letter in January, 1928, to the effect that he had been informed she had purchased the remaining part of lot 53, and that he was convinced that she would grant appellants the privilege of driving over her property (lot 53). Alfred Hertz, husband of respondent, also testified he was on the property in question about the year 1927, and that there was no roadway across it. The evidence also shows that the grantor, P. E. O'Hair, and his successor, P. E. O'Hair Realty Company, did not use lot 53 in any way for travel and had not laid out or constructed any roadway across or upon any portion of said lot.

Portions of the court's findings relative to the description and use of the property in question are as follows: "The Court finds, that Lot 53, during all of the time that the whole of, or any portion of it, was owned by P. E. O'Hair or the P. E. O'Hair Realty Company, and until on or about the 25th day of October, 1928, was open, uninclosed land; that at any place thereon for a distance of 200 feet along said Marin View Avenue one could drive with an automobile or truck on to Lot 53; that during all of said time it was a pasture ground for cows; many people used it as a picnic ground; drove out there and parked their machines, it was a natural place to park, a portion of it was level and over the steeper parts there was a cow trail which people followed, trucks delivered lumber and material, and delivery wagons drove across it; people used it as a common parking place; there were tracks across it in all directions. . . . And the Court further finds that there never was at any time or at all, or now is a right of way either marked out or constructed across any part of the premises of defendant. . . . That no roadway whatever across said Lot 53, or any part thereof, was ever laid out by said Walter Rueger, or any other person."

It is essential that one whose claim of a right of way is based on section 1104 of the Civil Code must prove the existence of a way that was being *obviously and per-*

*manently used* for the benefit of the property conveyed *at the time the transfer was agreed upon or completed.* (*Grimmesey* v. *Kirtlan,* 93 Cal. App. 658 [270 Pac. 243, 245]; *Beem* v. *Reichman,* 36 Cal. App. 258 [171 Pac. 972].) In *Jersey Farm Co.* v. *Atlanta Realty Co.,* 164 Cal. 412, at page 415 [129 Pac. 593, 594], the court stated with reference to said section: "It is a direct recognition of the principle long established and fully recognized by this court (*Cave* v. *Crafts,* 53 Cal. 135; *Quinlan* v. *Noble,* 75 Cal. 250 [17 Pac. 69]), that principle being that 'where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and with all the burdens that appear at the time of the sale to belong to it as between it and the property which the vendor retains'. It is this general principle which is given full recognition by section 1104. . . . If it be a burden obviously cast upon the land at the time of the segregation of the title it remains a burden upon that land in favor of the other parcel, and it is an 'easement' within the meaning of section 1104. . . . " The burden, therefore, was upon appellants to prove the existence of a roadway that would meet the requirements of the section as to use at the time of their predecessor's purchase of at least one of the parcels which comprise the ninety-foot strip. As to whether there was such roadway, rests in a conflict of evidence. The court's finding against appellant's allegations that such existed will not be disturbed.

 As to prescription: Appellants allege "that immediately upon acquiring title to the . . . " first-purchased parcel of the ninety-foot strip, "Walter Rueger laid out a road from the said property so purchased on said 30th day of August, 1919, across said Lot 53 to the said Marin View Avenue", said road being described by metes and bounds. Then follow allegations of user of this road for the necessary period. The court found specifically that no road was so laid out. Appellants attack this finding. There was no evidence to support the allegation in so far as the term "laid out" is generally used. Whether such roadway was so laid out is not essential. It is necessary to appellants' claim of easement by prescription, however, to show that there was a definite way across lot 53 (19 Cor. Jur., p. 899; *Vestal*

v. *Young,* 147 Cal. 721 [82 Pac. 383]; *Matthiessen* v. *Grand,* 92 Cal. App. 504 [268 Pac. 675]), and that this was adversely used for the prescriptive period. The burden was upon appellants to prove the existence of all the elements necessary to establish a prescriptive right. (*Costello* v. *Sharp,* 65 Cal. App. 152, 157 [223 Pac. 567]; *Matthiessen* v. *Grand, supra.*) In *Tarpey* v. *Veith,* 22 Cal. App. 289 [134 Pac. 367, 369], it was held that mere user was insufficient to establish such right. The court therein said: "Such user must be accompanied by a claim of right communicated to the owner of the land; or it must be shown that the user was so continuous and so openly and notoriously adverse to the owner as to create a presumptive knowledge in the owner that the person using the land was doing so under a claim of right." ▮ Appellants produced no evidence of actual notice. On the other hand, respondent's witness, Donald O'Hair, an officer of the P. E. O'Hair Realty Company, testified he had been in general charge of the business of the company since June, 1922; that no one had communicated to him any claim for a right of way over the property in question; and that he had never heard that any person claimed such right. Considering the evidence upon which it may be said the court based its findings, it is shown that lot 53 was uninclosed; that portions thereof were used by appellants and their predecessor in common with the public; that it was so used generally at "week ends" only; that travel was had thereupon in various directions, but that there was no well-defined roadway across said lot. In *Clarke* v. *Clarke,* 133 Cal. 667 [66 Pac. 10, 11], plaintiff brought action to quiet title to an open lot, and defendant, in his answer, claimed a right of way by prescription. The court in that case said: "The defendant and his tenants were in the habit of passing over the uninclosed strip of land when going to or from their business. The question as to whether or not the use was under a claim of right, or a mere matter of neighborly accommodation, was a question of fact to be determined by the court in the light of the relations of the parties, their conduct, the situation of the property, and all the surrounding circumstances. The court below saw the witnesses, heard them testify, and found the facts against defendant. Defendant testified that he used the

way and claimed the right to use it, but it does not appear that any such claim was ever made to plaintiff or to his grantor. It is not sufficient that the claim of right exist only in the mind of the person claiming it. It must in some way be asserted in such manner that the owner may know of the claim. The fact that the owner knew of the travel and occasional use of the property does not even raise a presumption that such use was hostile or under claim of right. If any party who is allowed by silent permission to pass over the lands of another, nothing being said as to any right being claimed, after five years, without showing that he ever communicated such claim in any way to the owner, can thus gain title by prescription, it would be a blot upon the law. An owner could not allow his neighbor to pass and repass over a trail upon his open, uninclosed land without danger of having an adverse title successfully set up against him.'' In *Watson* v. *Board of County Commrs.*, 38 Wash. 662 [80 Pac. 201], the court held that in order to establish a prescriptive right of way over unoccupied lands the use must at least be such as to convey to the owner ''reasonable notice that a claim is made in hostility to his title''. The use that was made of the property in question was not such that it constituted constructive notice of a claim of right. The evidence amply sustains the finding of the court that there was no adverse user. (19 Cor. Jur., pp. 898–901, and notes.)

■ Appellants complain of the court's finding regarding the claim for right of way for a pipe-line across lot 53. They allege that such line was laid by Walter Rueger. The court's finding is to the contrary. It found that the pipe-line was constructed by the Marin Municipal Water District, and this is supported by the testimony of the witness Rueger. The evidence shows that it was constructed and maintained by the water district.

■ As heretofore stated, appellants in their opening brief clearly rely on a right of way by prescription and under the provisions of section 1104 of the Civil Code. There is no claim made therein for a right of way of strict necessity. Respondent calls this to the attention of the court, and appellants reply that this is necessarily included in the construction of the section. We do not so understand. It is true that in construing said section it has been said

that in order to bring an easement within its provisions, it must be shown that such easement was "necessary for the reasonable enjoyment of the part sold" (*Grimmesey* v. *Kirtlan, supra; Beem* v. *Reichman, supra*), but where so held it has been referred to as only one of the necessary elements of proof under the section. (Jones on Easements, sec. 145.) We have hereinbefore referred to the opinion of the court in *Jersey Farm Co.* v. *Atlanta Realty Co., supra,* wherein Mr. Justice Henshaw stated that the section contemplates a burden obviously cast upon land at the time of the transfer. The court in *Cheda* v. *Bodkin,* 173 Cal. 7 [158 Pac. 1025], calls attention to the distinction between an action for right of way of necessity and an action under section 1104. In that case it was said (p. 13): "The complaint contains an allegation that the flow of water from the Molinari ranch to the Foster ranch was 'necessary for the full enjoyment, use and benefit of said Frank Foster Ranch', and appellants cite numerous authorities to the effect that this is not a sufficient pleading of strict necessity. These citations include *Kripp* v. *Curtis,* 71 Cal. 62–65 [11 Pac. 879], *Corea* v. *Higuera,* 153 Cal. 451 [17 L. R. A. (N. S.) 1018, 95 Pac. 882], *Cassin* v. *Cole,* 153 Cal. 677 [96 Pac. 277], and *Bully Hill etc. Co.* v. *Bruson,* 4 Cal. App. 180 [87 Pac. 237]. The cases cited do not support the contention of appellants. The authorities refer to rights of way of necessity, but respondent was not seeking to have the court decide that a right of way of necessity existed. The plaintiff's pleading was to the effect that at the time of the severance of the ownership of the two ranches by the deed of Mrs. Laydon to her mother there was an open and notorious use of the water which was appurtenant to the Foster ranch and a burden upon the Molinari ranch." We are of the opinion that the question of whether or not appellants are entitled to a way of strict necessity is not included in the construction of section 1104 of the Civil Code, relied upon by appellants.

The court's findings are supported by the evidence and its conclusions of law logically follow from the findings. The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 26, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 24, 1932.