[Civ. No. 8631.   Third Dist.   Feb. 1, 1957.]

PEARL CLARK et al., Respondents, v. JOHN W. CLARK et al., Appellants.

Weis & Weis for Appellants.

Manwell & Manwell for Respondents.

VAN DYKE, P. J.—This case involves a claim of plaintiffs and respondents to a right of way for road purposes over a strip of land 40 feet wide and one mile long, constituting the north 40 feet of the south half of the north half of Section 18, Township 15 North, Range 1 East, M.D.B. & M. in Sutter County. Plaintiffs joined as defendants the owners of the entire 40-foot strip which we shall hereafter call the roadway. The record disclosed that long ago one Jim Jones owned the whole section and that he and his neighboring landowners had used the 40-foot strip across the section as a roadway. Prior to 1900 the strip in use lay along the south line of the north half of the north half of the section. About 1900 the roadway was shifted 40 feet south to its present location. Use was made of the relocated roadway by successors in interest of Jim Jones from that relocation to the present time. The use was not chronologically continuous. There were interruptions due to various causes. For instance, in 1940 a flood so encumbered the eastern end of the roadway as to make it impassable to any but heavy-powered machinery, such as farm tractors. How many people used the roadway is not made certain by the testimony, but the record sufficiently shows that a fairly continuous use was made and that after the relocation and, indeed, even before that, there was a definite location of a 40-foot strip across the section. At times the surface was scraped and graded. Prior to 1936, however, the north half of the section containing the roadway came into the ownership of Sutter Buttes Land Company and respondents' title comes down to them from a grant made by Sutter Buttes

Land Company to their predecessors in interest in 1936. So far as respondents' claims are concerned, they cannot go back of this grant to their predecessors in interest because, the easements being private, the grantor, by owning the fee, had merged in itself the entire title irrespective of what prior use others may have made of the roadway. Nevertheless the testimony above referred to concerning the use of the roadway by Jim Jones and his neighbors is material as being some proof that the claimed adverse user by respondents and their predecessors in interest was over the same strip of land that had been so long used for road purposes. In 1936 Sutter Buttes Land Company conveyed to respondents' predecessors in interest approximately 24 acres of land, the north boundary of which ran approximately along the center line of the roadway for a distance of 1,220 feet east from the west line of Section 18. In 1948 Sutter Buttes Land Company conveyed to appellants the strip of approximately 20 feet in width lying between respondents' north line and the north line of the roadway. Thus respondents and appellants have a common boundary along a line approximating the center of the roadway for a distance of 1,220.6 feet. Respondents claim road easement rights over the north 20 feet of the roadway strip along the common boundary. The deed to appellants from Sutter Buttes Land Company also conveyed to them the fee of the roadway strip easterly from the end of said common boundary to the north and south center line of the section. The balance of the fee to the roadway still remains in Sutter Buttes Land Company against whom a default judgment was rendered in favor of respondents.

Appellants contend that the evidence is insufficient to support the judgment that respondents have road rights along that portion of the whole roadway now belonging to appellants and they further contend that the same insufficiency applies to that portion of the whole roadway which crosses the lands of Sutter Buttes Land Company and assert they have the right to attack the judgment against the land company because of its adverse effect upon appellants.

We will first consider the sufficiency of the evidence as to the prescriptive easement. The rules governing the sufficiency of proof of a prescriptive easement are familiar law and appellants cite *Clarke* v. *Clarke,* 133 Cal. 667 [66 P. 10], *Schudel* v. *Hertz,* 125 Cal.App. 564 [13 P.2d 1008], *Los Angeles Brick etc. Co.* v. *City of Los Angeles,* 60 Cal.App.2d

478 [141 P.2d 46], and other cases as determinative of what the proof must show. These cases hold that the user, in order to initiate and ultimately establish a prescriptive easement, must be in hostility to the legal title, and must be under a claim of right actually or impliedly communicated to the owner of the land. The adverse user must exist for five years and the proof must overcome presumptions that occupation by the claimant is in subordination to the legal title. Appellants accept the further rule that whether or not the user made was a matter of neighborly accommodation or was adverse is a question of fact to be determined by the trial court in the light of the relations of the parties, their conduct, the situation of the property and all the surrounding circumstances. Testing the record by these rules we find the following: Mrs. Pearl Clark, one of respondents, testified that she started using the 40-foot roadway in 1930; that there was an open road at that time over the whole strip across the section and that it remained an open roadway at all times until appellants closed it in 1951; that it was a dirt road upon which two cars could pass and that she used it every year; that after the 1940 flood the easterly part of the mile long roadway was not in good condition for about two years, although tractors used it; that people worked on the road a little each year until 1943 when the east portion of the road was put back in condition and used from that time on. She said that all of the people in the neighborhood used the road for heavy equipment and that it constituted the only way that such equipment could be taken through that part of the neighborhood; that counting the years before she acquired title her use as a person farming land in that vicinity continued for 30 years. Ida Jones was called to the stand by appellants. She was the daughter-in-law of Jim Jones and lived in the vicinity of the roadway up to 1938 when she moved into the town of Meridian. She testified that Jim Jones took the land up somewhere around 1851 and that as far as she knew the road had always been a farming road across the section. Her description of the road may be summed up in the following question and answer: "Q. People who used this road, nobody stopped them? A. Oh, no, it was wonderful, they went through there, to the trading post, and it was really a public road, you might say." Clyde Jones, son of Ida and grandson of Jim Jones, testified that the road had been established by his family many years before he had become familiar with it; that the road in its present location

has existed since 1901, prior to which time it was 40 feet to the north; that it was like all the roads were in those days, a dirt road, a straight road that went across the section; that he had used the whole road continuously down through the years; that the road had always been open, was well defined and traveled; that after the flood in 1940 for three years gates were maintained across this strip, but they were taken down and the road was open until the appellants closed it by fencing across it in 1951 or 1952, whereupon "they" knocked the fences down. James Clark, husband of Pearl, testified that beginning in 1930 he knew the road and used it up to the time when appellants closed it; that it was a long straight dirt road and though damaged by the 1940 flood had even then been used by tractors and heavy farm equipment because the other roads were paved and the law prohibited their use in that manner; that by 1943 it was in such condition that automobiles went back and forth over it. From respondents' testimony it could be inferred that their immediate predecessors in interest had also used the road for the benefit of the land now owned by respondents.

Although much of the testimony was as to use from immemorial time by members of the public and particularly by those living in the neighborhood, respondents did not seek to prove, nor did the court find, that the road was a public road. Respondents' case is based on the theory that they and their predecessors in interest since 1936 had made such use of the road as to acquire a prescriptive right appurtenant to their own land and a burden upon the owners of the fee for the entire length of the mile long roadway. ▆ We think the evidence is sufficient to sustain the trial court's findings that respondents and their predecessors in interest had used the roadway openly, notoriously, in hostility to the owners of the fee and adversely to them for a sufficient period of time to acquire title by prescription to the easement claimed by them. The evidence negatives any idea that respondents' use of the roadway was not under claim of right and done in hostility to the legal title. There can be no doubt from the testimony that the use was as continuous as the needs of respondents and their predecessors required in the use of their property.

▆ Appellants contend that the judgment appealed from is too broad insofar as it determines that respondents have a right to the free and open use of the roadway "clear of all gates, fences, ditches and other obstructions." They refer

to the well-known rule that the owner of the fee is entitled to use the land in any way not inconsistent with the easement and that the fencing in of the roadway, the erection of gates across it, the use of it for grazing purposes and prevention of its use by the general public are uses not inconsistent with the easement rights which are shown by the record. It is true, as contended by appellants, that many easements for road purposes across privately owned land are so limited as to permit the owners to maintain fences across the right of way with gates to permit passage by occupants of the dominant holding, and to permit other uses by the owners of the fee. But the real question, as in any easement case, is the extent and nature of the easement acquired. The easement here declared by the court to exist was acquired by prescription which, under the code, is one of the recognized modes of acquiring interest in real property and, therefore, the question posed by the appellants is whether or not that easement was of such a nature that the enclosure of the roadway by fences and gates and the maintenance of a drainage ditch along it would be inconsistent with the easement acquired. Here again we think the issue was one of fact for the trial court and that the inference which the trial court drew from the evidence as to the nature and extent of the easement is supported by the testimony we have recited. In view of the record we cannot say that the court's finding as to the extent of the right of use is broader than is supported by the record.

Appellants contend that the trial court exceeded its jurisdiction in awarding respondents more than their complaint asked for. It appears that the complaint sought to establish the easement for a distance of 3,960 feet into the section from its west boundary and did not seek to establish it across the entire section. Three thousand nine hundred and sixty feet from the west line of the section takes the roadway beyond the land of appellants and into the land owned by Sutter Buttes Land Company which defaulted in the case. Appellants seek to apply the rule that in the case of a default judgment plaintiff may not be awarded more relief against a defaulting defendant than his pleadings have demanded. The point is not available to appellants. It is no concern of theirs that the relief against their codefendant exceeded the relief demanded.

Finally, appellants contend that the judgment is unfair. It appears that prior to the judgment appellants had

constructed and were using a drainage ditch on that part of the roadway, the fee of which was owned by them. They were enjoined by the judgment from continuing such use of the roadway strip and from interfering in any manner with the free and open use of the road. The judgment further commanded appellants to restore the way to the condition in which it was before the commencement of the action and before they had obstructed it by constructing their drainage ditch. Appellants do not contend that the evidence does not justify the trial court in ordering them to restore the way to the condition in which it was before they constructed their ditch. Rather, they say that others had made like use of the way and no injunction was issued against them. Here again we think it does not lie with the appellants to make this complaint of discrimination. They wrongfully constructed their ditch and must now bear the burden of undoing that wrong.

Appellants seek a reversal of the order denying their motion for new trial. The motion was made upon the grounds of newly-discovered evidence, insufficiency of the evidence and error in law. We have examined their argument in support of their contentions in this respect and find them without merit. We think a detailed discussion is not necessary.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied February 20, 1957, and appellants' petition for a hearing by the Supreme Court was denied March 27, 1957.