[Civ. No. 17856. First Dist., Div. One. Dec. 29, 1958.]

THOMAS T. KENT et al., Respondents, v. HAROLD M. KOCH, Appellant.

Morris M. Grupp for Appellant.

Freitas, Allen, McCarthy & Bettini for Respondents.

BRAY, J.—Defendant appeals from a judgment restraining him from constructing a green fiberglass panel fence on his property without conforming to a certain declaration of restrictions, conditions, covenants and agreements.

### QUESTION PRESENTED

Defendant raises many questions. However, determinative of the appeal is the question of the right of plaintiffs, owning no lots in subdivision 1 (in which defendant's property is situated) to complain.

## FACTS

The facts are undisputed. In 1936 plaintiffs owned a large tract of land in Marin County which they called Kent Woodlands. That year they commenced to subdivide it. Since then they have been continuously developing it and selling lots. In 1936 they recorded the declaration of restrictions which is the basis for this action. The project started with subdivision 1 and then successive units were developed. At the present plaintiffs are preparing the 13th unit. Kent Woodlands is a high-class, single family dwelling residential area, lots selling from $4,750 to $25,000 each. Because of restrictions the minimum priced house and lot is $25,000, ranging from there to $200,000. As each unit was opened a declaration of restrictions as to it was recorded. The restrictions were similar to those in the declaration involved here. However, each declaration subsequent to that of subdivision 1 expressly provided that it was for the benefit not only of the property within the specific unit but for all of the property in Kent Woodlands. Plaintiffs have enforced all restrictions since the beginning. At first, applications for building were made to plaintiffs. Thereafter an Architectural Supervising Committee provided for in declarations other than the subdivision 1 declaration, was appointed by plaintiffs from property owners in Kent Woodlands (none from subdivision 1). There have been approvals and rejections of applications over the period. Plaintiffs contend that if the restrictions in subdivision 1 are not enforced the sales and values of all properties in all the units would be adversely affected. Plaintiffs have sold all lots in subdivision 1, but still own "Parcel A" as shown on the map thereof, retained as an entrance to Kent Woodlands. Apparently a lot is a plot of land sufficient to have a building erected thereon; a "parcel" is a plot of ground insufficient in size to be used for building purposes. Lot 32 in that unit was originally sold to one Spalding who did not build upon it. In 1955 defendant purchased it from Spalding. In November, 1955, he applied to the Architectural Supervising Committee for permission to construct a 6-foot green fiberglass fence around his property line. Contending that such fencing was inappropriate in Kent Woodlands, that it looked like a neon sign, and would have a commercial appearance, the committee denied defendant's application. The committee had denied 11 applications for fences in Kent Woodlands, one of which was in subdivision 1. Some of these

denials were on account of color. There are no fiberglass fences in Kent Woodlands.

The trial court found that defendant's lot is subject to the restrictions contained in the first declaration of restrictions; that plaintiffs own and are developing and selling lots in Kent Woodlands, that plaintiffs own no lots but do own a parcel in subdivision 1 known as parcel A and that the lots in the entire Kent Woodlands were sold in accordance with a general plan of restrictions which were for the benefit of all lots in the tract and of plaintiffs.

## THE DECLARATION

The "Declaration of Restrictions, Conditions, Covenants and Agreements Affecting Real Property Known as Kent Subdivision No. 1, Marin County, California," states that the plaintiffs are the owners of and about to sell the land shown on the recorded "*Map of Kent, Subdivision No. 1,*" and desire to subject the property "pursuant to a general plan of improvement, to certain restrictions, conditions, covenants and agreements between them and the several purchasers of *said property* and between the several purchasers of *said property* as between themselves as hereinafter set forth, Now, THEREFORE, the undersigned declare that *the property shown on said map* is held and shall be sold, conveyed, leased, occupied, resided upon, hypothecated and held subject to the following restrictions, conditions, covenants and agreements between them and the several owners and purchasers of *said property* and between the several owners and purchasers of *said property* as between themselves, and their heirs, successors and assigns: 1. All of said restrictions, conditions, covenants and agreements shall be made for the direct and mutual and reciprocal benefit of each and every lot *shown on said recorded map* and shall be intended to create mutual and equitable servitudes upon each of said lots in favor of each other lot *shown on said map,* and to create reciprocal rights and obligations between the respective owners of all of the lots *shown on said map* and to create a privity of contract and estate between the grantees of *said lots,* their heirs, successors and assigns, and shall, as to the owners of *each lot in said tract,* his heirs, successors and assigns, operate as covenants running with the land for *the benefit of all other lots in said tract* and the same shall exist and be binding until the 1st day of January, 1966, at which time they may be continued in force and effect by vote of the owners of the *majority of the prop-*

*erty*, for additional periods of twenty years . . ." (Emphasis added.) Then follow a number of restrictions: "4. No structure, either residence or outhouse, tennis court, swimming pool, wall, fence or other improvements shall be constructed upon any of the said lots without the approval as to location, height and design first having been obtained from the undersigned, their successors and assigns . . . 7. Violation of any of the restrictions, conditions, covenants and agreements herein contained, shall give to the undersigned, their successors and assigns, the right to enter upon the property upon or as to which said violation or breach exists, and to summarily abate and remove at the expense of the owner, any erection, thing or condition that may be or exist thereon contrary to the provisions hereof, without being deemed guilty of trespass . . . 12. *All purchasers of property shown on said map* shall, by the acceptance of contracts or deeds for *any lot or lots shown thereon*, or any portion thereof, thereby be conclusively deemed to have consented and agreed to all the restrictions, conditions, covenants and agreements. The undersigned further declare that they will restrict the sale, ownership, use and occupancy of adjoining and contiguous property offered by them for public sale at the time when said property is so offered in such a way as, in their opinion shall not impair the value of desirability of the property shown on said map, for residential purposes." (Emphasis added.)

### Plaintiffs' Right to Complain

A mere perusal of said agreement shows that it did not intend to make the restrictions for the benefit of any property other than that referred to in it, namely, the lots shown on the map of subdivision 1. It expressly says that it is for the direct benefit of "each and every lot shown on said recorded map." Time and again it refers to "said lots" meaning the lots shown on that map. There is not the slightest ambiguity in the document. It is impossible to read in to such clear language any intent to make the restrictions applicable to any other property. Plaintiffs contend that the last line of paragraph 12 above quoted shows such intention. On the contrary it strongly indicates that the restrictions are for the benefit of subdivision 1 lots only. That sentence instead of stating that plaintiffs would subject the new units (the adjoining and contiguous property) to be opened by them to the same restrictions as required of subdivision 1, or would

make any restrictions upon the new units applicable to sub-division 1 lots, merely states that plaintiffs will restrict the sale and use of such property "in such a way as, in their opinion shall not impair the value or desirability of the property shown on said map, for residential purposes." This language discloses that plaintiffs intended the new units to be completely independent of the first unit, except only that they would be restricted in such manner as in plaintiffs' opinion not to impair the desirability for residential purposes of the lots in subdivision 1.

It is well settled in this state that restrictive covenants made for the benefit of other property retained by the grantor can not be enforced by the grantor after he no longer owns any of the property benefited. In *Blodgett* v. *Trumbull* (1927), 83 Cal.App. 566 [257 P. 199], the grantors deeded to the plaintiff a certain lot subject to certain conditions and restrictions in the deed. Although these were not made for the benefit of the adjoining lots which belonged to the grantors, the court held (p. 571): ". . . the grantors did reserve for themselves, their successors or assigns, the right to enjoin, abate or remedy by appropriate proceedings any breach of any of the restrictions. The right so reserved would be enforceable, in the absence of fraud, while the defendant Trumbull [the surviving grantor] remained owner of the adjoining lots; but after she had parted with the property which would derive benefit from a continuance of the restrictions, she would have no standing, in a court of equity, at least, to complain of a breach." In *Townsend* v. *Allen*, 114 Cal.App.2d 291 [250 P.2d 292], the court stated (p. 297): "However it does not follow that the grantor retains said right of enforcement even though he has disposed of all land he had retained without making any such restriction. The contrary is shown by cases relating to building and occupation restrictions on subdivisions in which cases the right of enforcement of grantor is considered lost when he has lost all interest in the property to be benefited. In *Firth* v. *Marovich*, 160 Cal. 257, 260 [116 P. 729, Ann.Cas. 1912D 1190] it is said (obiter) : 'It is not open to question that building restrictions of the kind contained in the deed . . . are valid and enforceable at the suit of the grantor *so long as he continues to own any part of the tract for the benefit of which the restrictions were exacted.*' (Emphasis ours.)"

In *Marra* v. *Aetna Construction Co.* (1940), 15 Cal.2d

375, 378 [101 P.2d 490], the court said: "The doctrine of equitable servitudes has been invoked chiefly in cases where uniform building restrictions have been imposed pursuant to a general plan for improving an entire tract or real estate subdivision. . . . It is true, however, that a servitude cannot exist in gross, but must be appurtenant to other benefited property."

Plaintiffs rely on language in *Weston* v. *Foreman*, 108 Cal. App.2d 686, 692 [239 P.2d 513], to the effect that each new purchaser becomes "equally interested with the subdividers . . . in the continued functioning of the committee" whose duty it was under the restrictive covenants to effectuate the general plan of development of the declared restrictions. From this language plaintiffs deduce that the court was holding that the subdividers would continue after all the lots in the subdivision were sold to have the right to enforce the restrictions. That language contains no such implication. There is nothing in the case to indicate that the subdividers had disposed of all their property in the tract (if they had it is clear that such fact was not before the court and that the court was not passing upon such a situation). The footnote on page 693 would indicate that the subdividers still owned lots in the tract. Moreover, the dissenting opinion in construing the terms of the restrictive declaration states (p. 695) that the agreement contemplated that the subdividers desired to retain control of the types of structure to be erected in the tract until they had sold all the lots in it, after which "they contemplated that they would have no further interest therein."

*Hannula* v. *Hacienda Homes, Inc.*, 34 Cal.2d 442 [211 P.2d 302, 19 A.L.R.2d 1268], cited by plaintiffs, deals solely with the question of whether a restriction attempted to be imposed upon a lot owner by the subdivider came within the purview of the restrictive covenant. The plaintiff conceded that she must submit for the defendant's approval the plans for her proposed residence, but contended that the rejection of her plans went beyond the terms of the covenant. No contention was made that the defendant did not own property in the tract for the benefit of which the covenant was made, nor that the defendant could not enforce the covenant.

It must be remembered in construing the declaration of restrictions that "any provisions of an instrument creating or claimed to create such a servitude will be strictly con-

sidered, any doubt being resolved in favor of the free use of the land." (*Wing* v. *Forest Lawn Cemetery Assn.* (1940), 15 Cal.2d 472, 479 [101 P.2d 1099, 130 A.L.R. 120]; *Werner* v. *Graham*, 181 Cal. 174, 181 [183 P. 945].) Thus, plaintiffs having disposed of all the lots in subdivision 1, do not have any property to be benefited by the enforcement of the restrictions and have no standing in a court of equity. Actually, plaintiffs do own a small portion of subdivision 1. However, admittedly this "parcel," so-called on the map, is too small for residence purposes and was reserved for the special purpose of parking for the tract office which adjoins it, as an entrance to the tract, and as a location for the tract's signboard. It is obvious that this parcel would in nowise be benefited by the enforcement of the restrictions. *Blodgett* v. *Trumbull, supra,* 83 Cal.App. 566, 571, points out that after a grantor has parted with the property which would derive benefit from a continuance of the restrictions, such grantor has no standing in court to enforce the restrictions.

■ Restrictions in a deed cannot be enforced by one lot owner in a tract against another lot owner between whom there is neither privity of contract nor privity of estate. "The leading case on this subject, and the one that is determinative of this appeal, is *Werner* v. *Graham,* 181 Cal. 174 [183 P. 945]. In that case, among other things, it was specifically held that such servitudes will be enforced only when part of a general plan expressed in the deed, and when the deed expressly provides such restrictions are for the benefit of the other lots in the tract. In other words unless specifically stated to be for the benefit of other lot owners, such covenants or restrictions are enforceable only as between the original parties to the deed, or their heirs or assigns." (*Fees* v. *Williams,* 212 Cal. 688, 690 [300 P. 30]; see also *Townsend* v. *Allen,* 114 Cal.App.2d 291, 297 [250 P.2d 292].)

■ Plaintiffs' contention that the provision in paragraph 12 to the effect that plaintiffs will restrict the use of property in the units other than subdivision 1 gives them, as owners of property in the other subdivisions, a right to enforce the restrictions on subdivision 1, is answered by *Werner* v. *Graham, supra,* 181 Cal. 714 (1919), which the court says in *Wing* v. *Forest Lawn Cemetery Assn., supra,* 15 Cal.2d 472, 480, "has oft been cited as the leading case in this state defining the manner in which an equitable servitude may be established." There restrictive conditions were placed in a deed

of one lot in a tract which the owner was subdividing according to a map on file. No express statement was included to the effect that they were for the benefit of the other lots in the tract. In selling these other lots the grantor placed similar restrictions in the deeds thereto. The court held that the failure to state in the deed that the restrictions were for the benefit of the other lots in the tract, although most probably the grantor intended them to be, made the restrictions unenforceable by owners of any other lots. It said (pp. 183-184) : ''It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. The agreement between the grantor and each grantee in such a case as expressed in the instruments between them is both that the parcel conveyed shall be subject to restrictions in accordance with the plan for the benefit of all the other parcels and also that all other parcels shall be subject to such restrictions for its benefit. In such a case the mutual servitudes spring into existence as between the first parcel conveyed and the balance of the parcels at the time of the first conveyance. As each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding conveyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still retained by the original owner. Of this character is *Alderson* v. *Cutting*, 163 Cal. 504 [Ann. Cas. 1914A 1, 126 P. 157].

''The difference between such a case and the one at bar is that here there is no language in the instruments between the parties, that is, the deeds, which refers to a common plan of restrictions or which expresses or in any way indicates any agreement between grantor and grantee that the lot conveyed is taken subject to any such plan.''

''While the decisions in other states upon the question now before us are in conflict, it is recognized by the law writers that the majority view is to the effect that such restrictions and conditions as those now before us can be enforced only by the owner of a part of the land for the benefit of which the

restrictions and conditions were created." (*Young* v. *Cramer*, 38 Cal.App.2d 64, 68 [100 P.2d 523].)

See also *Alexander* v. *Title Ins. & Trust Co.*, 48 Cal.App.2d 488, 492 [119 P.2d 992], where the court stated, referring to the evidence, "It discloses a situation in which the reversionary right is held by an entity which is not the owner of the land in the same tract and cannot claim that its right as a landowner would be adversely affected as to use or value by removal of the restriction. It is held by a corporation as trustee for the syndicate which has disposed of all the property in the tract under restrictions as to use. These obviously had as their basis the benefit to be conferred on other property in the same tract." Just as in our case. Both parties cite *Los Angeles University* v. *Swarth* (1901), 107 F. 798 [46 C.C.A. 647, 54 L.R.A. 262]. There the complainants and others owned large tracts of land adjoining the city of Los Angeles. They joined in a deed to Los Angeles University, a corporation, of 7½ acres of land. The deed provided that the land was to be used exclusively as a campus for the university proposed to be located thereon, and that if prior to a certain date the land was not so used title would revert to the grantors. The court held (p. 806) : "In general terms, the benefit of a condition in a grant is reserved to the grantor and his heirs without regard to the ownership of other property; but, where the grant contains a restriction in the nature of a covenant that has relation to a benefit to adjoining property, the restriction can only be enforced in favor of the title to such adjoining property," and that as the complainants failed to show ownership in the land they could not maintain the action to restrain the defendant from using the lands for drilling for oil. The court stated that it was alleged in the complaint that the complainants and the others who had conveyed the land relied upon certain representations that the land would be used exclusively for university purposes to the benefit of the adjoining lands owned by the complainants and others. It then stated that as the complainants had no interest in these adjoining lands, they were no longer interested in the benefit arising from the restriction in the deed and therefore were not in a position to maintain the action. This case upholds the principles we have heretofore discussed and in no way supports the contention that mere ownership of adjoining lands gives the right to enforce restrictions in a deed that does not provide that the restrictions are for the benefit of those adjoining lands.

As plaintiffs have no interest in any property to be benefited by the restrictions, they may not maintain this action.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 28, 1959, and respondents' petition for a hearing by the Supreme Court was denied February 25, 1959.