[Civ. No. 8364. Fourth Dist., Div. Two. Mar. 28, 1968.]

ARROWHEAD MUTUAL SERVICE COMPANY et al., Plaintiffs and Respondents, v. EDWARD F. FAUST et al., Defendants and Appellants.

568

570

Eckhardt & Kearney and Matthew M. Kearney for Defendants and Appellants.

Goodman & Cogen and Benjamin J. Goodman for Plaintiffs and Respondents.

GABBERT, J. pro tem.*—Defendant Faust appeals from a judgment in favor of plaintiffs after a court trial. The action was brought to restrain Faust from carrying on a real estate business on a lot owned by him in claimed violation of certain

*Assigned by the Chairman of the Judicial Council.

restrictions on the use of the lot for other than residential purposes.

The plaintiff Arrowhead Mutual Service Company (hereinafter referred to as Mutual Company) was the claimed owner of reversionary rights in the tract of land later described. The Mutual Company was a wholly owned subsidiary of plaintiff Lake Arrowhead Development Company (hereinafter referred to as Development Company). The Development Company for some years had acted in several capacities in the resort area of Lake Arrowhead in the San Bernardino Mountains. Among other things it had engaged in real estate subdivision development in an area called Arrowhead Woods. The owners of three lots in the tract of land involved were also joined as plaintiffs. The three lot owners sought injunctive relief independently of the Mutual Company seeking to enforce recorded tract restrictions. The Mutual Company, joined by its parent the Development Company, sought a decree that it was the owner of reversionary rights in the lot in question and prayed for a judgment of conditional forfeiture or reverter of title to the lot in the event the defendant Faust violated any injunctive relief granted by the court. The court before the termination of the trial permitted an amendment to a portion of the prayer of the complaint to allow the Mutual Company to seek the same injunctive relief as that sought by the three lot owners.

The property involved is Tract 2285, also known as Arrowhead Woods Tract 72. The tract consists of 105 lots on which 78 single family residences had been constructed at the time of the trial. These homes ranged in value from about $20,000 to as much as $50,000.

The tract was conveyed to Title Insurance and Trust Company in 1927 by grant deed from Ralph J. Bell. The grant deed created certain restrictions. The conditions set forth in the deed were specifically declared to be "conditions subsequent" and provided that the use of the property was limited to single buildings for private residence purposes and by the specific condition that no business or profession was to be maintained or carried on on the premises. Building was limited to single family residences. No signs or advertisements were to be displayed, erected or posted on the premises without written permission.

The grant deed from Bell also contained a provision that any breach of the conditions, restrictions or reservations of the deed would permit the grantor, or successors in ownership

of the reversionary rights, to re-enter and take possession of the premises. The conditions, restrictions and reservations were recited as being binding upon and effective against any subsequent owner.

The Bell grant deed provided further that all conditions and restrictions inured not only to the benefit of the grantor, his heirs, successors and assigns, but also to the benefit of the owners of the lots in the tract of land described. The deed provided that proceedings to enjoin any violation or breach of the conditions or restrictions could be brought by the grantor, his heirs, successors and assigns, by the Title Insurance and Trust Company, or by not less than three owners of lots in the tract.

The grant deed also made provision for the creation of an Architectural Committee to pass upon, approve or reject all applications for the erection of buildings and improvements. Such committee was created and has been in existence for many years. This committee set up certain architectural and design standards which have been used in passing on plans submitted for review.

Each grant deed from the Title Insurance and Trust Company, to the first grantee for each of the lots involved, specifically referred to the restrictions that had been created. The appellant Faust purchased Lot 88 in the tract in question in 1962. His acquisition of title was subject to conditions, restrictions and reservations of record. He had acted as a real estate broker in this area and had personal knowledge of the restrictions of record on the lots in the tract. He knew that only single family residences were permitted on the property and of the limitations for business use of the premises. No lots in the tract had been used at any time for business purposes. Faust caused plans for the construction of a single family residence to be prepared and submitted to the Architectural Committee. The plans were approved and returned with the notation written on them: "To be used for private residence only." Faust, at this time, had the undisclosed intent to use the residence building, when completed, as a real estate office.

Faust built a single family residence on the lot. Since its construction the building has been continually used for a real estate office by Faust and not for a residence. On the premises he maintains large signs advertising the sale of homes and has one flashing light and other lights which are kept burning all night illuminating one or more of the signs.

Immediately after the giving of the grant deed by Bell to

Title Insurance and Trust Company, and on the same day, Bell conveyed to the Mutual Company, by grant deed, the reversionary rights in the tract. The deed was recorded. In 1928 the Mutual Company was also granted the reversionary rights in other tracts in Arrowhead Woods. These tracts consisted of several large areas mainly composed of residence building lots. The Mutual Company has never released the various restrictions on the tract in which Lot 88 is located.

Since 1960 the Development Company has handled the subdivision of more than 2,600 lots in various tracts, all of which are restricted to residential use except some 26 lots which are included in an area known as the "U.C.L.A. Conference Grounds." About $22,000,000 in value of lots have been so created by the Development Company. Areas have been set aside for orderly commercial growth and a master plan has been adopted under the professional guidance of a planning consultant. The County of San Bernardino has adopted parts of this master plan, implementing it by a zoning ordinance covering the tract in question and zoning it as R-1 for single family residential use. Appellant Faust sought and established a nonconforming business use for Lot 88 prior to the enactment of the zoning ordinance.

The tract in which appellant's lot is located is approximately in the center of all of the tracts being used for residential purposes in the area or being subdivided by the Development Company.

The Faust property is located on a corner of Highway 59 and Hemlock Street. On the same side of the highway all other tracts for a distance of one and one-half to two miles are restricted for single family residence use. Most are improved with residences. Surrounding tracts are likewise largely improved with single family residences.

The Village of Cedar Glen is located about 800 feet from the Faust lot. The Cedar Glen property is zoned for C-2, R-3 and R-1 use; there is considerable commercial development in this area. Faust had a real estate office in Cedar Glen which he had used in the past. This office, at the time of trial, was not being so used although it was still under Faust's control.

Across the highway from the Faust property is a single structure for apartment rentals; it is located on acreage. The Cedar Glen area was never a part of Arrowhead Woods and the properties in that area were not restricted to single family residential use. Nearby and across the highway from appel-

lant's lot are a service station and nursery; these businesses were built upon unrestricted property.

A fire station is located about two blocks from the Faust property involved in this case but in the adjoining tract of Arrowhead Woods. It is placed on a site originally allotted in the development scheme for a fire station. An expert appraiser gave it as his opinion that the existence of such a station was a plus factor for a residential area. He further testified that it was his opinion that such buildings are generally permitted in residential neighborhoods and that their presence had a favorable affect on insurance rates. There are a few single family residences located on other nearby tracts which are occupied by persons who conduct businesses in or out of their homes. These consist of a home occupied by a locksmith who has a repair van which he headquarters at his home; he also does a small amount of business repairing outboard motors in his garage. In another home a woman conducts a hobby knitting class and sells knitting needles and yarn to her students and others. In still another home a building contractor maintains his family, receiving business telephone calls there. At one time the contractor had a business sign on the home but removed it on notice from the Development Company. In other adjacent subdivisions comprising Arrowhead Woods the overwhelming use of the properties is for residential purposes.

In the past the Development Company has taken action to have business signs removed from homes when they appeared and at least three other lawsuits have been instituted to enjoin the operation of businesses in other tracts in the resort area. The trial judge took judicial notice of these other cases and their disposition during the trial of this matter. In all of these other cases the Superior Court of San Bernardino County enjoined some or all of the various defendants involved from violating restrictions similar to those involved in this case. The only case which removed any restrictions was on an unimproved parcel of acreage fronting on the Cedar Glen turnoff highway and outside the tract involved in this present matter. In that case the parcel was restricted to use for residential income property only.

Apparently, pressure has developed to increase areas of commercial development in the Lake Arrowhead region. Faust testified that, in his opinion, his proprty was worth $26,000 to $27,000 for residential use and $52,000 if used for commercial purposes. Those areas where any considerable commercial development has taken place have, in general, been so used

ever since the inception of resort development or activity around Lake Arrowhead, or have been used for commercial purposes for many years, generally on unrestricted land. A small number of restricted lots, in scattered tracts of residential subdivisions, have been used at various times for real estate offices, to show model homes, or as business offices in homes. In several of these cases the Development Company has initiated negotiations to terminate such use. In a few cases the use was continued. As pointed out above, however, Faust's real estate office was the only business use that had ever been carried on in the tract in question.

As in most cases involving questions of restrictions and changed conditions in the use of property, a determination of questions of fact is involved. The lengthy record reveals substantial evidence to support the trial court's finding and, as said in *Robertson* v. *Nichols*, 92 Cal.App.2d 201, 207 [206 P.2d 898], ''The findings of fact of the trial court in a case such as this are entitled to the same weight as in any other case. Its findings of fact, if based on any substantial evidence, are final, and his conclusions, sitting as a chancellor in equity, are entitled to great weight.''

. In addition, in the present case, the judge made an independent view of the scene by stipulation of counsel. ''This view constituted substantial evidence in support of the questioned findings, the rule being established that the trier of fact's view of an area is independent evidence which can be considered by him in arriving at his conclusion and is substantial evidence in support of findings consonant therewith.'' (*Key* v. *McCabe,* 54 Cal.2d 736, 739 [8 Cal.Rptr. 425, 356 P.2d 169].)

The evidence disclosed the following matters which support the trial court's finding that no changed conditions existed which should entitle the defendant to use the premises in question for business purposes in violation of the restrictions against such use:

(1) The tract involved is entirely residential, no invasion of it had ever been attempted until defendant began the use of his property for a business purpose.

(2) Single family residences had been in use on the tract for some thirty years.

All other tracts bordering on the same side of the highway are residential in nature.

(4) An expert real estate appraiser testified that the Faust

property was suitable for single family residence use. This witness further testified that business use of the premises by Faust would not benefit other residential owners in the same tract. He also testified that the tract restrictions on use of the lots in Tract 72 for single family residences were of material benefit to the other lot owners.

(5) There was testimony that the business center in Cedar Glen did not affect the tract in question.

(6) Some of the residents of the tract testified that they considered it desirable that the restrictions be maintained.

(7) Those business uses which were urged as showing changed conditions were at a distance from the property in question, across the road, on unrestricted land or on other properties which had never been a part of the Arrowhead Woods development, or were minimal in nature.

██ "The rule is established that when a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Key* v. *McCabe, supra,* p. 738; *Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231].)

██ The appellate court "must view the evidence in the light most favorable to the respondent, resolving all conflicts and indulging all legitimate and reasonable inferences to uphold the finding." (*Endo* v. *State Board of Equalization,* 143 Cal.App.2d 395, 399 [300 P.2d 366]; *Estate of Isenberg,* 63 Cal.App.2d 214, 216-217 [146 P.2d 424].)

██ An attack on the trial court's findings will only be sustained if, after resolving all doubts and conflicts, the finding is so arbitrary and unreasonable that it cannot be sustained. (*Larson* v. *Thoresen,* 116 Cal.App.2d 790, 795 [254 P.2d 656].)

██ Considering, in addition, the trial judge's view of the premises in question, the evidence in this case amply supports the findings of fact that it would not be inequitable to enforce the restrictions against Faust.

Up to this point we have assumed the existence of reversionary rights in the Mutual Company.

Appellant argues that this case falls within the facts of the cases of *Kent* v. *Koch,* 166 Cal.App.2d 579 [333 P.2d 411]; *Alexander* v. *Title Ins. & Trust Co.,* 48 Cal.App.2d 488 [119 P.2d 992]; *Young* v. *Cramer,* 38 Cal.App.2d 64 [100 P.2d

523]. In essence this argument is that the Mutual Company and the Development Company do not hold a dominant tenement and are thus not entitled to injunctive relief. The case of *Kent* v. *Koch, supra,* is inapplicable to the present case because the plaintiff in that case did not own any reversionary rights to the lots in the tract in question. He was seeking to enforce restrictions for the benefit of lots not included in the declaration of restrictions. *Alexander* v. *Title Ins. & Trust Co., supra,* involved conduct which made it completely inequitable for the conditions to be enforced. The case of *Young* v. *Cramer, supra,* dealt with an equitable servitude, not with a right of re-entry, such as we have presented in the case before us.

The cases of *Shields* v. *Bank of America,* 225 Cal.App. 2d 330 [37 Cal.Rptr. 360], and *Russell* v. *Palos Verdes Properties,* 218 Cal.App.2d 754, [32 Cal.Rptr. 488], discuss and distinguish the *Young, Alexander* and *Kent, supra,* cases in situations where, as here, restrictions are properly cast as conditions subsequent. In situations where a right of re-entry is provided, there is sufficient material interest in the land to permit the enforceability of the restrictions by the successors in ownership of the reversionary rights.

Restrictions upon the use of land may be imposed by conditions subsequent, covenants running with the land, and equitable servitudes or equitable easements. The conditions and restrictions in the Bell deed were in the express form of a condition subsequent, which would give a right of re-entry onto the premises resulting in a reversion to the Mutual Company in the event of a violation of the restrictions. The right of reversion was given to Bell as a personal right, not because of his ownership of the land in the tract. Thus, the Mutual Company had sufficient interest to institute suit to enforce the restrictions as successor to Bell. Covenants respecting land are enforceable as equitable obligations against the promisor's successors without any showing that the covenant is made for the benefit of other land owned by the promisee. (*Shields* v. *Bank of America, supra,* 225 Cal.App.2d 330; *Russell* v. *Palos Verdes Properties, supra,* 218 Cal.App.2d 754; *Thew* v. *Thew,* 35 Cal.App.2d 691 [96 P.2d 826].)

The Mutual Company in essence was the original covenantee because of the fact that the deed by Bell to Title Insurance and Trust and the deed by Bell to the Mutual Company were virtually simultaneous acts. The Mutual Company became the beneficiary for its members, all original

landowners in the tract in question, of the promise made by the covenantor, the original grantee in the Bell deed.

When a covenant does not run with the land because of some lack of an essential requirement, equity will sometimes enforce the obligation against the successors of the covenantor by an injunction against breach. The burden of the covenant thus becomes an equitable easement or servitude in the land of the covenantor. (2 Witkin, Summary of Cal. Law (1960) p. **1045.**)

Typical examples of equitable servitudes are restrictions, such as are involved in this case, on the use of land. Where land is subdivided and lots are sold under a restricted use plan under proper conditions, such restrictions are enforceable by one lot owner against another. (*Weber* v. *Graner,* 137 Cal.App.2d 771 [291 P.2d 173].)

Clauses requiring architectural approval of construction plans have been upheld as beneficial and promotive of land use. (*Hannula* v. *Hacienda Homes, Inc.,* 34 Cal.2d 442, 444-445 [211 P.2d 302, 19 A.L.R.2d 1268]; *Weston* v. *Foreman,* 108 Cal.App.2d 686, 693 [239 P.2d 513].)

Restrictions are to be strictly construed against limitations on the free use of property. (*Wing* v. *Forest Lawn Cemetery Assn.,* 15 Cal.2d 472, 479 [101 P.2d 1099, 130 A.L.R. 120]; *Kent* v. *Koch, supra,* 166 Cal.App.2d 579, 585; *Weber* v. *Graner, supra.*) It has been stated that such restrictions must be worded carefully. (*Weber* v. *Graner, supra.*) In the present case there was an express statement of a common plan. The lots conveyed were stated to be subject to such plan. The express conditions were set out. The restrictions in the Bell deed were set out expressly as being a condition subsequent. The Mutual Company was to have the right of re-entry on violation. While the law does not favor forfeiture of title, when the terms of the deed are clear and a valid purpose for restriction is set forth clearly and unambiguously, provisions for forfeiture of title have been enforced by the courts. (*Rosecrans* v. *Pacific Elec. Ry. Co.,* 21 Cal.2d 602, 605 [134 P.2d 245]; *Biescar* v. *Czechoslovak-Patronat,* 145 Cal.App.2d 133, 142-143 [302 P.2d 104].)

In the present case, the Mutual Company sought injunctive relief, and only in the event of a violation of any injunction that the court might issue, was forfeiture prayed for. The court did not order a conditional judgment of forfeiture and thus, appellant cannot complain that the judgment against him gave one of the plaintiffs less than the evidence

might have supported. (*Clark* v. *Clark*, 148 Cal.App.2d 223, 228 [306 P.2d 556].)

Under the doctrine of equitable servitudes, restrictions under a general plan for a subdivision may be enforced against successors of the original grantee-covenantor. The restrictions must be set forth in the original deeds or by a properly recorded declaration of restrictions directly referred to. The restrictions must be declared to be for the benefit of the lot owners in the tract. Both of these requirements were met in the present case. At trial, counsel for Faust admitted that the requirements for the creation of equitable servitudes as set forth in the landmark case of *Werner* v. *Graham*, 181 Cal. 174, 183 [183 P. 945], were "probably met" and that no evidence would be offered to the contrary.

The rule is stated in *Werner, supra,* pp. 183-184, as follows: "It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. The agreement between the grantor and each grantee in such a case as expressed in the instruments between them is both that the parcel conveyed shall be subject to restrictions in accordance with the plan for the benefit of all the other parcels and also that all other parcels shall be subject to such restrictions for its benefit. In such a case the mutual servitudes spring into existence as between the first parcel conveyed and the balance of the parcels at the time of the first conveyance. As each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding conveyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still retained by the original owner. Of this character is *Aldeson* v. *Cutting,* 163 Cal. [503] 504 [126 P. 157. Ann.Cas. 1914A 1]."

An additional essential requirement for the enforcement of an equitable servitude is that the grantee take the estate with notice of a valid agreement concerning it which he cannot refuse to perform. (*Bryan* v. *Crosse*, 155 Cal. 132 [99 P. 499].) Even constructive notice is sufficient. (*Wayt* v. *Patee*, 205 Cal. 46 [269 P. 660].) Appellant Faust had per-

sonal knowledge and thus actual notice of all of the conditions and restrictions.

The restrictions of the Bell deed were set out in the first deed to each original purchaser of all lots in the tract in question. The requirements for the creation of mutual equitable servitudes, as laid down in the leading case of *Werner* v. *Graham, supra,* 181 Cal. 174, were fully met. The conditions and restrictions were to inure not only to the benefit of the grantor but also to the heirs, successors and assigns of the grantor and also to the benefit of the owners of the lots in the tract.

Thus, valid equitable servitudes were created in the tract in question. Sustainable conditions subsequent were also created by the original deed. These servitudes and conditions are enforceable in equity. The individual lot owners and the Mutual Company, owner of the reversionary rights, had proper interest sufficient to protect the property by seeking injunctive relief. ▆▆▆ The fact that the judgment also was granted to the Development Company, of which the Mutual Company is a wholly owned subsidiary, is immaterial. (*Title Insurance & Trust Co.* v. *Fette,* 90 Cal.App. 606, 610 [266 P. 570].)

▆▆▆ Injunctive relief was also properly granted the individual plaintiffs, C. H. Sterling, Frank and Imogene Herring and Albert Zurgilgen. A major argument was advanced by appellant that these individuals should not have judgment because two of the owners were substituted as parties prior to trial, taking the place of two parties who had sold their lots. The substitutions were made on court order and were proper. No disability appears to have been incurred by appellant because of the court's ruling. Appellant was not prevented from having any necessary discovery. No new or different cause of action was introduced. No changes were requested in the pleadings or in the proposed issues at the pretrial hearing. The new parties were lot owners who sought to enforce the same liabilities against appellant as did the original parties. The amendment was properly allowed by the trial court in furtherance of justice. (*Klopstock* v. *Superior Court,* 17 Cal. 2d 13, 20 [108 P.2d 906, 135 A.L.R. 318] ; *Saari* v. *Superior Court,* 178 Cal.App.2d 175, 179 [2 Cal.Rptr. 856] ; *Chatten* v. *Martell,* 166 Cal.App.2d 545, 553 [333 P.2d 364].)

▆▆▆ At the trial the required number of three lot owners in the tract were before the court as plaintiffs. The appropri-

ateness of the injunction is to be determined as of the time of the order or judgment, unless there are other special circumstances involved. (*American Fruit Growers, Inc.* v. *Parker,* 22 Cal.2d 513, 515 [140 P.2d 23] ; *Mallon* v. *City of Long Beach,* 164 Cal.App.2d 178, 188 [330 P.2d 423] ; *Pacific Gas & Elec. Co.* v. *Minnette,* 115 Cal.App.2d 698, 709 [252 P.2d 642].)

 Appellant argues that the court abused its discretion in permitting the plaintiff Mutual Company to amend the prayer of the complaint at the conclusion of the trial and before the case was submitted. The amendment added an injunction on behalf of the plaintiff Mutual Company enjoining the defendants from carrying on the activities referred to in the prayer which had been requested by the individual plaintiffs.

The Mutual Company sought relief by way of injunction instead of by way of forfeiture. Appellant was not aggrieved by this lowering of the demands of the Mutual Company. (*Pomerantz* v. *Bryan Motors, Inc.,* 92 Cal.App.2d 114, 120 [206 P.2d 440].) The court may grant any relief in cases where an answer has been filed consistent with the case made by the complaint and embraced within the issues. (Code Civ. Proc., § 580; *Nathan* v. *Dierssen,* 164 Cal. 607 [130 P. 12].)

 There is no fixed formula to determine whether or not there has been such a change of circumstances in the use of property so as to permit appellant to invoke the equitable relief that he would have the court apply in this instance. There was substantial evidence, including the view of the area by the trial judge, which established that there had not been such change of conditions in the area in question which would make it inequitable to enforce the restrictions. The Mutual Company had sufficient material interest in the property of appellant to permit it to enforce the restrictions and the individual parties-plaintiff were also properly entitled to the injunctive relief granted.

The judgment is affirmed.

McCabe, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied April 25, 1968, and the petition of appellant Faust for a hearing by the Supreme Court was denied May 29, 1968.