[Civ. No. 6032. Fourth Dist. May 26, 1959.]

JOHN C. GREEN et al., Respondents, v. SPRAGUE RANCHES (a Partnership) et al., Appellants.

Musick, Peeler & Garrett and Charles T. Munger for Appellants.

Mack, Bianco, King & Eyherabide for Respondents.

SHEPARD, J.—May 3, 1956, plaintiffs let to one McNally, by a written lease, certain farm land under a one-quarter gross crop rental with termination date December 31, 1957. October 5, 1956, defendants herein became the assignees of that lease and the parties hereto entered into a modification agreement whereby, among other provisions, plaintiffs as owner-lessors granted to defendants as lessees a right of first refusal on the purchase of said land should plaintiffs decide to sell. This first refusal clause, after providing for notice by plaintiffs to defendants of the price, terms and conditions of any offer received from a third party requires defendants, within 30 days from such notice, to deposit with a bank or title company the initial payment of such noticed offer, and that upon failure of defendants to make such deposit plaintiffs may sell to any third person at or above the noticed price. July 11, 1957, by letter from defendants to plaintiffs with plaintiffs' written acceptance, a second modification agreement was entered into changing the terms of the lease from crop rental to a fixed cash rental; reducing time for defendants' exercise of their right of first refusal to 15 days after receipt of notice of offer; and adding the following:

"(4) We shall have an option, exercisable by written notice mailed to you at the address hereinabove used prior to December 1, 1958, to purchase the rented property;

"(5) In the event of our exercise of the option our purchase of the property will be consummated as soon as possible after January 1, 1959 through escrow at the office of Title Insurance & Trust Company at Bakersfield, California, with costs, responsibilities and other items in connection with the sale to be borne and pro-rated in accordance with conventional California real estate practice, and we shall be entitled to possession of the property pending close of escrow. We will purchase the property subject only to the then unpaid balance of the first trust deed now a lien on the property, and the option price shall be the delivery to you of our note dated January 1, 1959, secured by second trust deed on the property, bearing interest payable annually (or monthly if you so desire) at the rate of 10% per annum, with all principal payable in a lump sum on December 31, 1968. Our note shall be in such original prin-

cipal amount that the total of all interest and principal payments to be made under the note will equal the difference between:

"(a) $133,000 (being $143,000 less the $10,000 in rent which will have been paid); and

"(b) the then unpaid balance of the first trust deed now a lien on the property.

"Except as herein modified, the terms of the existing lease between us shall remain in effect."

May 28, 1958, plaintiffs gave notice to defendants that they had received and accepted, subject to defendants' right of first refusal, an offer for the purchase of the land in question for the agreed purchase price of $150,000, with a total down payment of $15,000 and the balance of $135,000 payable $6,750 per year, with 6 per cent interest on deferred payments. June 9, 1958, defendants gave written notice to plaintiffs that they elected to exercise their fixed price option as set forth in paragraphs 4 and 5 (above quoted) of the second modification agreement. June 19, 1958, plaintiffs filed this action for declaratory relief and for reformation. Said complaint contains certain allegations of fraud and mistake but at the time of trial those allegations were abandoned, and the trial was had entirely on the question of whether or not the fixed price option contained in the second modification agreement was or was not extinguished by the notice of offer given by plaintiffs on May 28, 1958, under the first refusal clause of the first modification agreement. During the trial defendants offered proof of the surrounding circumstances connected with the execution of the agreements, which evidence was, on objection of plaintiffs, refused by the trial court. The judgment and decree that plaintiffs have the right to sell the real property to the third party in accordance with the terms of the new offer, and that under the first refusal clause the defendants have no right or option to purchase said real property, in effect held that the right of defendants under the fixed price and term option was extinguished by the defendants' failure to meet the terms of the offer under the first refusal clause.

Defendants' first contention on appeal is that the trial court erred in construing the documents in question so as to extinguish appellants' option to buy the ranch at a fixed price. It cites two authorities which to some extent support its contention.

*Butler* v. *Richardson*, 74 R.I. 344 [60 A.2d 718] involved a

right of first refusal clause, together with a fixed price option in the amount of $15,000. The court, in discussing what effect the provision for a first refusal had, if any, upon the provision for an option, said:

" 'As we indicated above it has no effect whatever. The right of option remains unimpaired. Until the time prescribed for its exercise expires, the respondents cannot sell for any amount without complainant's consent. However, the provision for a first refusal may nevertheless serve a useful purpose. It provides a means whereby respondents, if they desired, could induce an acceleration of complainants' decision to purchase by affording them an opportunity to purchase at a price more advantageous to them than the price fixed in the option. Of course the provision could not serve this purpose if the offer was at a higher price, and consequently it is inconceivable that the parties in agreeing to the provision could have contemplated any offer except one that was lower than $15,000. We are of the opinion, therefore, that the provision for a first refusal should be construed in that light, not so much as an alternative to the provision for an option but rather as a supplement thereto.' "

*Barnhart* v. *Stern*, 182 Wis. 197 [196 N.W. 245] involved the interpretation of a contract containing a first refusal clause, which was followed by the words "and the said lessee is hereby given the option to purchase the said premises for the sum of fifteen thousand ($15,000.00) dollars at any time during the continuance of the lease." The reasoning of the court in that case is identical with the reasoning expressed in the quotation from *Butler* v. *Richardson*, *supra*, and the court held that the first refusal clause and the fixed price option were two distinct and separate privileges, and notice of offer under the first refusal clause did not extinguish the fixed price option.

Plaintiffs, in support of their contention that the exercise by plaintiffs of the first refusal clause would extinguish defendants' rights under the fixed price option clause, cite several cases. *Manasse* v. *Ford*, 58 Cal.App. 312 [208 P. 354], involved a fixed price option in a lease followed by a first refusal clause. However, the language of the first refusal clause includes mention of the amount of the fixed price option and by its own frame-work explicitly provides for the extinguishment of the fixed price option when the procedure of the first refusal is followed and completed. Its wording is definitely different from that in the case at bar. *Adams* v. *Hel-*

*burn,* 198 Ky. 546 [249 S.W. 543] involved a fixed price option and the next immediately following sentence provides a first refusal clause. The court held that under the particular wording of that contract the exercise of the first refusal rights would cut off and extinguish the fixed price option if it was not exercised before the lessor gave notice of a higher offer. *Shell Oil Co.* v. *Blumberg,* 154 F.2d 251, again involved a fixed price option followed by a first refusal clause, and the lessee's fixed price option was held to have been extinguished through the exercise of the first refusal clause because the lessee neglected to exercise his fixed price option until after the sale to the third person had been completed. *Sinclair Refining Co.* v. *Allbritton,* 147 Tex. 468 [218 S.W.2d 185, 8 A.L.R.2d 595], involved a lease with a fixed price option and also a first refusal clause. The lessee in that case gave notice of exercise of the fixed price option and defendant responded with notice of a third party higher offer. The court there held that the lessee was not obligated to buy under the first refusal clause and had the right to a completed purchase under the exercise of a fixed price option.

It will be seen from the foregoing that there is some apparent difference in the approach and reasoning used by the courts of different jurisdictions in the United States. However, a close examination of these cases indicates the difference to be more apparent than real, for each case has been decided under the peculiar facts there present with slight differences in the wording in each instrument construed.

 Under the peculiar facts of the case at bar, in which there was an original lease with no option, the modification thereof with a first refusal clause, the exercise of which would extinguish its own privileges, and the second modification which inserted an entirely new thought in the form of a fixed price option, which by its express terms continued to December 1, 1958, and specified that it would be exercised by the giving of written notice and consummated by delivery to escrow of a trust deed and encumbrance to commence January 1, 1959 (one day after the termination of the lease), the intention of the parties would more reasonably appear to have been to create an independent and separate right not extinguishable by the exercise by plaintiffs of the first refusal clause. We are unable from the writings themselves to support the reasoning of the trial court.

Defendants also contend that the trial court committed re-

versible error in excluding, as an aid to construction of applicable documents, evidence of surrounding facts and circumstances and parol evidence offered by defendants. Thus the defendants offer the alternative suggestion that the document in question was ambiguous, and that because of such ambiguity the court should have aided its interpretation by evidence of surrounding circumstances.

The conflict in the position of the two parties to this action on their interpretation of the writing as it stands is in fact the conflict shown in the wording of the document itself. Plaintiffs contend that the clear wording of the first refusal clause would extinguish the fixed price option if the first refusal clause were given full force and effect. Defendants contend that the clear wording of the fixed price option would certainly override the provisions of the first refusal clause if the wording of the fixed price option is given all of its full force and effect. It is thus apparent that there is a definite conflict within the terms of the document itself, and if no extraneous evidence were available the last written expression of the parties would control and the fixed price option would override any conflict which occurred between it and the first refusal option.

However, wherever such an ambiguity appears and other evidence of the circumstances surrounding the execution of the agreement is available, it is the duty of the court to receive such evidence in aid of its interpretation. (*Von Rohr* v. *Neely*, 76 Cal.App.2d 713 [173 P.2d 828] ; *Cadigan* v. *American Trust Co.*, 131 Cal.App.2d 780, 784 [3] [281 P.2d 332].)

"When a contract is in any of its terms or provisions ambiguous or uncertain, 'it is primarily the duty of the trial court to construe it *after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto.'* " (*Walsh* v. *Walsh*, 18 Cal.2d 439, 443 [3] [116 P.2d 62].)

Sections 1856 and 1860, Code of Civil Procedure, provide the basic rules of construction in this respect.

"This rule of evidence is invoked and employed only in cases where upon the face of the contract itself there is doubt and the evidence is used to dispel that doubt, not by showing that the parties meant something other *than* what they said but by showing what they meant *by* what they said." (*United Iron Wks.* v. *Outer H. etc. Co.*, 168 Cal. 81, 84 [141 P. 917].)

We are satisfied that under the particular facts of

this case there was ambiguity between the two clauses of the contract which warranted and demanded the receipt by the court of whatever evidence was available to explain what the parties meant by what they said, and the refusal to receive such evidence was prejudicial error.

The judgment is reversed, and a new trial ordered.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied June 22, 1959.