[Civ. No. 6427. Fourth Dist. Aug. 16, 1960.]

L. W. BRAMWELL et al., Respondents, v. HOWARD C. KUHLE et al., Appellants.

Charles E. Burch, Jr., for Appellants.

Holliday, Folsom & Winters and David S. Folsom for Respondents.

GRIFFIN, P. J.—Plaintiffs and respondents are the owners of residence property in a tract of land in the Muirlands area of La Jolla. They brought this action to enjoin the construction of a residence upon a lot owned by defendant and appellant Howard C. Kuhle and wife and upon which defendant and appellant Schwarzkopf is engaged as a contractor. Plaintiffs claim that the proposed construction is in violation of restrictions placed on the property by the subdividers, referred to in the restrictions as "owners." No contention is made that the restrictions are invalid or inoperative as to the property in the subdivision. The contentions of defendants are that they complied with them and that they obtained the approval of their plans and specifications by the original subdivider after this action was brought and that other property holders in the subdivision have waived any right they had, under the restriction agreement, to insist upon enforcement of them.

The principal question arises over the construction of the terms of the instrument and the true intent of the parties in connection with it. The facts reveal, as gleaned from the record and the memorandum opinion of the learned trial judge in deciding the case, that in 1938 the tract in question was owned by Mr. and Mrs. C. W. Rodecker, who undertook to subdivide and sell the area in building sites of approximately one acre each, subject to the restrictions created by recorded declaration of restrictions dated April 30, 1938. This declaration contains a number of express general requirements with regard to the size of the buildings to be erected and their location upon the building sites with reference to setback and matters of a similar nature. The real controversy in the case arises over the provisions requiring the submission of plans and specifications for a proposed building and the approval of such plans and specifications prior to construction. The restrictions plainly set forth that they are for the benefit of each and every building lot in the area; that they constitute covenants running with the land; that each building site shall remain subject to the restrictions; and that the owners of the property within said restricted area shall have the right as the holders of dominant tenements to enforce the same. The right of the original owners or subdividers to enforce the restrictions is reserved, and the instrument contains a reversionary clause in case of a breach thereof.

It is provided generally that the purpose of the submission

for approval of the plans and specifications is in order that buildings to be erected on the various building sites shall be in architectural harmony each with the other, and that a general architectural style will be developed and encouraged which is to be somewhat rambling in character, with the general plans in harmony with gardens and patios.

The principal argument between the parties arises with reference to the provisions of paragraphs 16 and 17 of the instrument which provide for the appointment of a committee which may be appointed by the subdividers or may be elected by a majority of the owners of parcels in the tract. They read as follows:

"16) That wherever these restrictions require the approval of the owner, such approval *may* be given by a Committee appointed by said owner, or where said owner refuses to act, or with consent of the owners, by a committee elected by a majority of the owners of said parcels or plots, provided, however, that in the event that said owners or said Committee, fail to give approval or disapproval, within thirty days after written request has been made therefor, or said owners refuse to act, and there is not such Committee appointed or elected, then such approval will not be required, *provided* any building to be erected conforms to and is in harmony with similar structures in said tract, and, if a dwelling occupies a ground floor area, not less than that hereinabove provided.

"17) That any said Committee appointed by the Owners, shall consist of not more than three members and their appointment shall be disclosed by a written instrument setting forth the names and addresses of the members, and the period for which they are appointed. Said instrument shall be signed by the owners, who shall acknowledge its execution before a Notary Public, and shall record said instrument in the office of the County Recorder of San Diego County." (Italics ours.)

Then follows a provision as to the *election* of a committee by the owners of a majority of said parcels of land, which provision is not particularly applicable here because the committee functioning at the time this action was brought was *appointed* by the owners of the subdivision.

The defendants contend that at all times the subdividers retained the absolute right to pass upon, approve or disapprove proposed plans, regardless of whether there be appointed a committee for that purpose or not. The trial judge stated that, under the well-established rule in California, *subdividers*, upon having disposed of all of their property, and having thus no further interest in any part of the subdivided tract,

have no further power to *enforce the restrictions* (citing *Kent v. Koch,* 166 Cal.App.2d 579 [333 P.2d 411], and *Weston* v. *Foreman,* 108 Cal.App.2d 686 [239 P.2d 513]), but that it would not follow that the subdividers were automatically relieved of all duty or obligation, nor would there be anything improper in providing for an approval of plans and specifications by them, or a continuing power to appoint a committee to whom the power and duty of passing upon proposed buildings would be delegated. The trial court concluded, however, that the obvious construction of the instrument, under the circumstances of this case, would be that it was the duty and obligation of the subdividers to see to it that the restrictions were enforced as long as they retained an interest which gave them legal authority to compel enforcement, and upon disposing of title to all of the restricted property it became the obligation and duty of the subdividers to appoint a committee of property owners vested with the power and authority to carry on and to approve or disapprove proposed plans and specifications and enforce the restrictions. The trial judge further stated that it was obviously not intended that after the appointment of such a committee the subdividers should retain any power to approve or disapprove, particularly after they had ceased to be beneficially interested property owners; that it must be held, therefore, that upon the appointment of a committee, and its assuming to act, the power and authority to pass upon plans and specifications became vested in the committee and were no longer vested in the subdividers. He pointed to the fact that in 1945 the subdividers had disposed of all of the building sites and were no longer beneficially interested in the restricted area. Having represented to purchasers, however, that the area was restricted and that the restrictions would be enforced for the benefit of all property owners, it was their continuing duty and obligation to see that the necessary steps were taken for the appointment of a committee, and it was a positive duty to do nothing to interfere with the enforcement of the restrictions. An instrument was prepared for the appointment of a committee some time in March of 1959 and was actually signed by the subdividers in June. It was signed by the appointed committee of property owners the following day and was recorded on July 1.

Pertaining to other evidence, the trial judge stated:

"Mr. and Mrs. Rodecker not only ceased to be legally beneficially interested in the enforcement of the restrictions, but they actually lost interest in the matter after disposing of

their holdings. Although it was their duty and obligation to forthwith create the necessary committee for the protection of the parties to whom they had sold property, they failed and neglected to do so. Their only contact with matters in the county thereafter was through an attorney, who acted under strict orders not to divulge their whereabouts or their address. As a result, the interested parties were unable to have any contact with them. This made little difference for a number of years, for the reason that none of the parties constructing buildings undertook to violate either the letter or the spirit of the restrictions. Parties proposing to build conferred with the neighboring property owners with reference to the proposed plans and apparently gracefully accepted any suggestions made. The result was that the buildings erected upon the tract in question were harmonious in their general appearance and architecture, and an improvement was built up which blended together in a way that greatly enhanced the value of the area. There was no reason, therefore, to invoke any procedure under the restrictions. If it be that there are any minor deviations, it would appear that they were inadvertent and in any event were acceptable to the neighborhood.

''It will be seen, therefore, that until 1958 there was no call for action to be taken on behalf of the residence owners. Certainly they cannot be charged with the failure of the Rodeckers to perform their duty of appointing a committee, nor can there be a waiver of the right so long as the matter has not been called into question.

''The first time that any cause for objection arose was when the defendant Schwarzkopf undertook construction of a house in the tract for himself. He took the attitude that he was not concerned with the restrictions, nor was he concerned with the attitude of neighboring property owners as to whether they liked what he was doing. Objections on the part of several of the property owners to the fact that his building then under construction was in violation of the restrictions were disregarded.

''This matter having arisen, Mr. Schwarzkopf placed a copy of his plans and specifications in the hands of the local representative of the Rodeckers. No action whatever was taken upon the plans, either to approve or disapprove them. Interested property owners approached the representative of the Rodeckers with the request that action be taken for the appointment of a committee. An instrument for that purpose was prepared, but the execution thereof and the delivery to the committee was delayed until Mr. Schwartzkopf had finished

his building. By the express terms of Paragraph 18 of the restrictions, the building thus completed was beyond any action to enforce the restrictions."

In speaking of the present building and conclusions reached, the court stated:

". . . the Rodeckers no longer had authority to approve or disapprove those plans, for the reason that the authority was then vested in a duly authorized committee. Furthermore, this action was taken in the face of knowledge that the committee was dissatisfied with the proposed construction and that the neighboring property owners were sufficiently dissatisfied with the type of building that had been started that they had brought action to enjoin it. Furthermore, the Rodeckers did not make any investigation to ascertain the type of development that had gone on or to ascertain whether the plans were or were not violative of the restrictions. The act of signing of this purported approval was not in good faith, was not for the purpose of determining the fact of whether the proposed construction was harmonious with the buildings already built, but was done at the instance of defendant Schwarzkopf and was done for the obvious purpose of nullifying the restrictions and constituted a fraud upon the owners of property within the subdivision and an attempted fraud upon the Court.

"It follows, therefore, that it must be held that the purported approval of these plans was a nullity and that the legal situation is therefore that the defendants have knowingly attempted to construct a building without complying with the requirements of the restrictions for the submission and approval of plans, and with an intent to disregard and violate those restrictions."

The trial judge then stated that:

". . . defendant Kuhle placed the entire matter in the hands of Mr. Schwarzkopf and apparently had no part in the maneuvers which followed. However, they were done by his authorized agent and he is legally charged with the results thereof."

He added that the plaintiffs were entitled to injunctive relief, and stated that the judgment shall enjoin the defendants from continuing with the construction of the present building and the injunction shall extend to the agents, servants and employees, and to the heirs and successors in interest of the owners of the lot. The injunction shall also provide that no further construction shall be had until the restrictions have been complied with by the submision and approval of the

plans and specifications to the committee. Evidence was introduced to the effect that it is impossible to so alter the house as commenced as to comply with the restrictions, and the court stated that if it is impossible to so alter the house as commenced as to comply with the restrictions, then the present framework is to be taken down. Findings and judgment were entered accordingly.

The pivotal question is whether the instrument itself, when considered in connection with the recited facts, supports the trial judge's findings and conclusions that the approval of the plans by the subdividers, at the time indicated, was of no force and effect and that the approval by the appointed committee was a necessary prerequisite to the construction of the building

It appears to be conceded by the trial court that as long as the subdividers had some property interest in the subdivision it would be proper for them to approve plans for construction of homes therein, particularly where no committee had been appointed or elected for this purpose, and that it would be valid for such subdividers to provide in the instrument for some named architectural committee or person to act for that purpose even after the subdivider had disposed of his entire interest in the subdivision. (*Weston* v. *Foreman, supra,* 108 Cal.App.2d 686, 693 [236 P.2d 513].) There is no express language in the restrictions that it was intended thereby that the subdividers' right to approve or disapprove plans for homes in the tract would cease when all lots had been sold. This theory comes from the general case law and from the general plan indicating that the restrictions were to be maintained for the benefit of other lot owners in the tract and attached as equitable servitudes which were restrictions common to all the parcels. (*Alderson* v. *Cutting,* 163 Cal. 503 [126 P. 157, Ann.Cas. 1914A 1]; *Wing* v. *Forest Lawn Cemetery Assn.,* 15 Cal.2d 472, 480 [101 P.2d 1099, 130 A.L.R. 120].)

The next question is whether the instrument, as thus drawn, shows that it was the intent and that it was contemplated that the subdividers desired to retain control of the types of structures to be erected in the tract until a committee was appointed or elected to have control after the subdividers had sold all the lots in it. Viewed in this light, the restrictions imposed are definitely stated to be that they are imposed for the protection of said real property and each owner thereof and that they shall inure to and pass with said real property to any new owner as a servitude in favor of said property. It

then provides that wherever these restrictions *require* the approval of the said owners, such approval may be made by a committee appointed by said owners, and in the event said owners or said committee fail to give approval or disapproval within 30 days, after written request, then such approval will not be required, provided the building to be erected conforms to and is in harmony with similar structures in said tract.

Any instrument appointing the committee by the owners, as was here done, must be recorded. Authority is given to the owners to remove members of the committee and appoint new ones and thereafter the written approval by any such committee is conclusive and binding on all parties having any rights under the restrictions. It then provides that all conditions and restrictions terminate on January 1, 1963, unless continued by agreement of the committee. There follows a recitation that the owners or committee may, at any time they deem a breach of the conditions or restrictions has occurred, record a notice thereof and an action thereon must be commenced within sixty days or the breach will be deemed remedied; that the owners or any committee may enter any of the premises and inspect as to compliance and any breach of conditions operates as a covenant running with the land and will cause it to revert to the owners or their successors, heirs, etc., or may be enjoined or abated by *any other owners,* their heirs, etc. It will be noted that throughout the instrument the word "owners" is used interchangeably in describing the subdivision owners and the individual owners, which results in some confusion in the interpretation of the instrument. The instrument is capable of the interpretation that the restrictions would terminate on January 1, 1963, unless a majority of the individual property owners executed a renewal thereof as provided therein, and after such renewal the owner-subdivider would no longer have the right to enforce them. From the instrument itself, it does not appear that the subdividers did intend, after January 1, 1963, the time when the restrictions would expire unless renewed by the lot owners, to retain the right to approve and pass on plans and specifications for homes built in the subdivision. A close question arises as to whether that right was automatically taken from the subdividers by reason of the fact that they had disposed of all their interest in the tract prior to that date. In *Firth* v. *Marovich,* 160 Cal. 257 [116 P. 729, Ann.Cas. 1912D 1190], it was said (quoting from the syllabus) :

"A restriction in a deed, prohibiting the erection of any

buildings on the land conveyed except a private residence of a specified minimum value is valid and enforceable at the suit of the grantor, *so long as he continues to own any part of the tract* for the benefit of which the restrictions were exacted." (Italics ours.)

See also *Kent* v. *Koch,* 166 Cal.App.2d 579, 584 [333 P.2d 411]. In *Blodgett* v. *Trumbull,* 83 Cal.App. 566, 571 [257 P. 199], where the grantors deeded to the plaintiff a certain lot subject to certain conditions and restrictions in deeds, it was said:

". . . the grantors did reserve for themselves, their successors or assigns, the right to enjoin, abate or remedy by appropriate proceedings any breach of any of the restrictions. The right so reserved would be enforceable, in the absence of fraud, while the defendant Trumbull (the surviving grantor) remained owner of the adjoining lots; but after she had parted with the property which would derive benefit from a continuance of the restrictions, she would have no standing, in a court of equity at least, to complain of a breach."

(See also *Quatman* v. *McCray,* 128 Cal. 285 [60 P. 855]; *Sanborn* v. *Rice,* 129 Mass. 387; *Evans* v. *Foss,* 194 Mass. 513 [80 N.E. 587]; *Meigs* v. *Milligan,* 177 Pa. St. 66 [35 A. 600]; *Boyden* v. *Roberts,* 131 Wis. 659 [111 N.W. 701]; *Townsend* v. *Allen,* 114 Cal.App.2d 291 [250 P.2d 292].)

It therefore affirmatively appears in the instant action that, since the original owners and subdividers parted with title to all lots in the subdivision, they, as such owners, lost the *right of enforcement* of the restrictions. Among a subdivider's rights pertaining to enforcement, as set forth in the instrument, are the right to require uniformity as to construction, design, color, area of floor-space and that plans and specifications must be presented and approved before any building is constructed. The method of enforcement of these conditions is set forth. Therefore, it may well be reasoned that if the subdivider lost the *right of enforcement* he likewise lost the right to demand compliance and it might necessarily follow that he would lose the right to approve or disapprove of plans and specifications which were or could well be in violation of the restrictions, since he had previously appointed a committee for this purpose.

It has been held that extrinsic evidence as to the purpose of the restrictions is admissible, not to vary any of the terms of the restrictions, but to find the intention of the parties as to a point not directly involved in and left in doubt

by the instrument. (*Boyer* v. *Murphy,* 202 Cal. 23, 28 [259 P. 38] ; *Townsend* v. *Allen, supra,* 114 Cal.App.2d 291 [and cases there cited].) ▮▮ It is the familiar rule that:

". . . when a contract is in any of its terms or provisions ambiguous or uncertain, 'it is primarily the duty of the trial court to construe it *after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto.*' " (*Green* v. *Sprague Ranches,* 170 Cal.App.2d 687, 692 [339 P.2d 607].)

▮▮ A doubt does arise here as to the effect of the subdividers' appointment of a committee and its exclusive power to pass upon and approve the plans and determine whether there is conformance to the restrictions imposed by the subdividers. It is not clear from the agreement and authorities cited whether the owner-subdividers would have the authority to approve the plans and make the further determination that there had been a sufficient compliance, if a committee had been appointed for this purpose after the property had been disposed of by the subdividers, and whether the subdividers would then have the power to approve them after the committee had disapproved them or vice versa. Such a right does not appear from the instrument and to so hold would be incongruous to the intent expressed therein and the interpretation given the instrument by the trial judge. Under these circumstances, which approval would prevail? The evidence discloses that one of the plaintiffs testified that when the dispute here arose among the lot owners as to the restrictions required, defendants, through their attorney, asked this plaintiff to serve as a member of this committee, "to relieve the Rodeckers of the responsibilities that they had" and that he accepted the appointment. Since the subdivider-owners did appoint a committee for this purpose and the committee acted, declared that a breach of the conditions had occurred, and recorded the requisite notice of such breach, the committee did, in effect, and prior to the claimed approval of the subdivider-owners, disapprove of the plans as contemplated. We conclude that the trial court was justified by the evidence in its ruling that the owner-subdividers had no authority thereafter to approve the plans under the circumstances indicated.

▮▮ In the instant action, the court heard considerable evidence to the general effect that when the subdivision was started the owners created the restrictions referred to in order that the purchasers of property would be subsequently pro-

tected from violations by purchasers who might otherwise not conform to the restrictions. The instrument stated and restated that these restrictions were protective conditions and restrictions for a general plan, imposed as a servitude in favor of all property and owners in the subdivision and for their benefit. It appears that their interests still need that protection. The subdividers appointed a duly qualified committee to pass on and approve or disapprove of these plans and to require conformance with this general plan. The subdividers, admittedly, have no interest, real or otherwise, in the subdivision since all lots were sold and they moved to Los Angeles in 1945. They made themselves unavailable to the lot owners for consultation or for the purpose of enforcing these restrictions. Only their attorney, Mr. Grauf, knew of their whereabouts. They took their problems in reference to defendants' violation to Attorney Grauf. He succeeded in having some of these lot owners appointed members of a committee for the purpose of enforcing the restrictions and approval of plans. The committee notified defendants of the claimed breach to no avail and this action ensued. Defendants, through this same attorney, obtained the signatures of approval of the secreted subdividers who never came to see the surrounding property or made any examination of the building or its placement on the grounds or its effect upon the other property owners in the subdivision, and who continued to remain secreted from these individual property owners, knowing all the time of the property owners' opposition to the construction of this house as planned. The court found as a fact that these plans were "not in architectural harmony with the other houses in the area." Apparently this was the first set of plans ever approved or seen by the Rodeckers for any building in the subdivision. Furthermore, the fact that the subdividers knew of the objections being made by the individual property owners, that they had appointed a committee from them to act and pass upon the question of plans and specifications, and then, without further investigation, attempted to approve the plans in the manner indicated, adds much to the finding of fraud and deceit on the part of the subdividers and the defendants through their agent. The trial court's finding, after hearing all the evidence, that defendants, as well as the Rodeckers were perpetrating a fraud, not only upon the property owners in the subdivision but also upon the court, has evidentiary support.

Furthermore, from this evidence, it might well appear that

the approval of the owner-subdividers to the plans submitted by defendants was arbitrary or a mere mockery and not an approval as contemplated by the restriction agreement. Approval, in this respect, implied knowledge and exercise of discretion after knowledge. (*State* v. *Duckett,* 133 S.C. 85 [130 S.E. 340]; Black's Law Dictionary 132, Fourth Edition; *Bedford Investment Co.* v. *Folb,* 79 Cal.App.2d 363, 366 [180 P.2d 361].) ▮ In *Hannula* v. *Hacienda Homes, Inc.,* 34 Cal.2d 442, 447 [211 P.2d 302, 19 A.L.R.2d 1268], it was said:

"Each of the decisions enforcing like restrictions has held that the refusal to approve plans must be a reasonable determination made in good faith." (Citing cases.)

The converse should likewise be true. ▮ It also said that "the power to approve plans and site must not be exercised capriciously or arbitrarily." The evidence sufficiently supports the finding of the trial court in this respect.

There is no merit to the claim that the instrument appointing the committee was of no effect until it was actually *recorded.* It is provided in the restrictions that such instrument is to be recorded, and that when so recorded it shall be conclusive evidence of the appointment of the committee. It is only with reference to an instrument whereby the power of a member of the committee is terminated that the same shall not be effective until recorded. The evidence does not indicate that plaintiffs waived any right they had under the restriction agreement to insist upon enforcement of its provisions.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied September 8, 1960, and appellants' petition for a hearing by the Supreme Court was denied October 13, 1960. Schauer, J., was of the opinion that the petition should be granted.