In re CASA ROMANTICA BY THE SEA, J.V., Debtor.

George T. WELSH, general partner, and the Welsh Family Partnership, a California limited partnership, Plaintiffs,

v.

CASA ROMANTICA BY THE SEA, J.V., Defendant.

CASA ROMANTICA BY THE SEA, J.V., Counterclaimant,

v.

George T. WELSH, general partner, and the Welsh Family Partnership, a California limited partnership, Counterdefendants.

Nos. CV 83–5651–KN, CV 83–6417–KN and CV 83–7912–KN.
Bankruptcy No. SA 82–03937–AP.
Adv. No. SA 82–2811–AP.

United States District Court,
C.D. California.

Jan. 3, 1985.

Milan D. Smith, Smith & Hilbig, Torrance, Cal., Robert A. Greenfield, Bruce Bennet, Stutman, Treister & Glatt, Los Angeles, Cal., for plaintiffs.

Keith Williams, Bernard J. Hittner, Williams & Hittner, Newport Beach, Cal., for debtor/defendant.

## ORDER

KENYON, District Judge.

Debtor, Casa Romantica By the Sea, J.V. ("Casa") appeals from the Bankruptcy Court's opinion which found the contract entered into between Casa and the Welsh Family Partnership ("Welsh") to be an integrated and unambiguous contract. Further, the Bankruptcy Court also found that the contract is a true escrow contract with certain provisions being in the nature of an option to extend the closing date of the Escrow. The Bankruptcy Court also found that the lease at issue was not a tax planning device, but was rather a device to enable the possession of the property to be transferred prior to the closing of the Escrow. For the reasons set forth below, we AFFIRM the Bankruptcy Court's findings.

Before setting forth a brief factual background for this opinion, it is necessary to state that the standard of review to be used by this Court in ruling on Casa's appeal will be de novo.

## I. *Factual Background*

On March 28, 1980, Welsh and Parsa Development Company ("Parsa") entered into an agreement entitled "Exchange Agreement and Escrow Instructions" ("Agreement"). Under this Agreement, Parsa agreed to acquire, and Welsh agreed to convey the real property known as "Casa Romantica By the Sea", ("Property") upon the terms and conditions stated therein. The original purchase price was 2 million dollars plus any additional purchase price attributable to one or more extensions of the closing date of escrow. The Agreement provided that Parsa could extend the closing date of escrow up to eighteen months by paying certain extension consideration into escrow.

Shortly after entering into the Agreement, Parsa assigned its rights in the Agreement to Casa, and Casa assumed Parsa's obligations thereunder. This transaction is reflected in the Assignment and Assumption Agreement entered into between Parsa and Casa on November 5, 1980. (Appellant's Excerpt of Record P. 77–78.)

Pursuant to the terms and conditions of the Agreement, Parsa and Casa extended the closing of the Escrow to April, 1982 by paying Welsh $150,000.00 in escrow.

On January 5, 1982, Welsh and Casa amended the Agreement by executing an amendment ("First Amendment") to the Agreement. The First Amendment provided that the closing of escrow would be extended to August 11, 1982. The consideration for this extension was $100,000 with $25,000 payable in April, 1982 and $75,000 payable in May, 1982.

On or about May 11, 1982 Casa and Welsh further amended the Agreement by executing another amendment ("Second Amendment"). The Second Amendment was executed concurrently with a lease ("Lease"), which included an option to purchase. The terms of the Second Amendment provided that the closing of escrow could be extended on a month-to-month basis beyond the agreed Escrow closing date of August 11, 1982 for a period through August 11, 1983. This month-to-month extension would be granted upon condition that Casa pay to Welsh the sum of $12,-000.00 with respect to each monthly option period. The Second Amendment also provided that if the required payment for an extension period was not made within 15 days after written notice from Welsh that such payment was late, then Welsh in its sole discretion could terminate both the Escrow and Lease.

In August, 1982, Casa failed to perform its financial obligations under the Second Amendment, and Welsh subsequently served a "15-day Notice of Default" upon Casa on August 26, 1984. On September 7, 1982 Casa filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code.

## II. *Analysis*

The major issue in this appeal is whether the Bankruptcy Court erred in not considering the extrinsic evidence offered by Casa to prove that the Second Amendment and Lease created a vendor/vendee relationship between the parties and that Casa was the true owner of the Property. Casa contends that it was obligated to purchase the Property by the terms of the Agreement, and that nothing in the subsequent Amendments and Lease modifies this obligation. It further argues that since it was obligated to purchase the Property, the Amended Agreement would constitute a real property installment sales contract as defined in California Civil Code § 2985. Consequently, the Amended Agreement would be a disguised security agreement under federal bankruptcy law.

The Bankruptcy Court, however, found that the Amended Agreement was unambiguous and integrated. Therefore, extrinsic evidence was admissible to explain the circumstances under which the contract was made, but not to vary or contradict the terms of the Amended Agreement. This Court concurs.

■ California Code of Civil Procedure § 1856(a) provides that terms set forth in a writing intended by the parties as a final

expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. This Court finds that the Amended Agreement and Lease constitute an integrated agreement with respect to the status of the parties with respect to the Property. This Court particularly notes that Paragraph 22 of the Agreement states that the Agreement and its exhibits constitute the entire agreement between the parties. This provision is not in conflict with the First or Second Amendments, and was therefore still entitled to full force and effect. Further, since the terms of the Amended Agreement and Lease are complete, the extrinsic evidence offered by Casa cannot be considered for the purposes of varying the terms of the parties' written understanding.

California Code of Civil Procedure § 1856(g) provides that the parol evidence rule does not exclude extrinsic evidence which explains an extrinsic ambiguity or interprets the terms of an agreement. The Law Revision Commission Comment for § 1856 states:

> Evidence offered to interpret or explain the meaning of the terms of a written agreement is subject to the normal rules of admissibility and construction of instruments, including the rule that the "test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 37, [69 Cal. Rptr. 561, 564] 442 P.2d 641, 644 (1968).

Law Revision Commission Comment, Cal. Civil Code § 1856 (Wests 1983).

In applying this test to the Amended Agreement and Lease, this Court finds that while "strange" language was used by expert lawyers, who may have had their own agenda in drafting the documents at issue,

it is clear that the Second Amendment and Lease do *not* create nor indicate a sale between Casa and Welsh. Therefore, the Amended Agreement along with the Lease are *not* reasonably susceptible to the meaning advanced by Casa through its offer of extrinsic evidence.

■ Casa asserts that without the consideration of extrinsic evidence, there is no way to resolve the conflict between Casa's obligation to purchase in the Agreement and its option to purchase in the Lease. This Court disagrees with Casa's assertion. First, the Second Amendment, which specifically refers to the concurrent execution of the Lease, states in Paragraph 5:

> Except as specifically amended herein and in the Amendment, all provisions of the Agreement not in conflict with this instrument shall continue in full force and effect.

Appellant's Excerpt of Record, Exhibit E. P. 148 (emphasis added). Paragraph 5 thus makes clear that any previously existing obligation to purchase was superceded by the Second Amendment and Lease.

The Lease itself sets forth the status of the parties. Paragraph 53 states that Casa, as lessee, is granted a month-to-month option to purchase the Property up to August 11, 1983 on the terms and conditions set forth in the Second Amendment. Further, Paragraph 49 states:

> *Expression of Intent.* It is expressly understood and agreed that Lessee is taking possession of the Premises 'AS IS' in their present condition and that the primary purpose of this lease is to require Lessee to assume all responsibility for the upkeep, maintenance, and carrying of the Premises during the term of this lease as provided hereunder, so as to enable Lessor to be freed from such concerns while Lessee holds the Premises *in anticipation of purchasing,* subletting and further improving or developing the same....

Appellant's Excerpt of Records, Exhibit F, P. 156, (emphasis added).

In considering the provisions referred to above, this Court finds that Casa and Welsh were parties to an escrow agreement, and that Casa was a lessee with a monthly option to purchase the Property, which corresponded to Casa's monthly option to extend the closing of the Escrow. In order to extend the closing of the Escrow, or to maintain the monthly option to purchase, Casa was required to pay the consideration set forth in the Second Amendment. Anything in the Agreement which conflicts with this status would no longer be entitled to full force and effect. Moreover, the Expression of Intent as stated in Paragraph 49 makes clear that Casa's taking possession of the Property was in *anticipation* of purchasing the Property— *not as* consummating a purchase of the Property.

Casa also claims that the characterization of the monthly payments to be made under the Second Amendment is ambiguous. Specifically, Appellant points to Paragraphs 21, 49, and 53 of the Lease and Paragraph 2(b) of the Second Amendment. This Court disagrees. Paragraph 21 concerns "additional rent," not the rental payments described in Paragraph 4 of the Lease. Paragraph 49 states that *together* with the lease payments, the Casa is required to pay the underlying secured debt on the Property. Paragraph 53 merely describes the Casa option to purchase, and refers to paragraph 2(a) for a description of the consideration for the option. Last, Paragraph 2(b) does not deal directly with the monthly lease payments, but rather apparently concerns already due payments for previous extensions of the Escrow.

While these paragraphs could have been better drafted, this Court finds that the basic purpose and effect of the monthly payments remain clear. In essence, these payments were to constitute rent as well as consideration to keep alive Casa's month-to-month option to purchase the property or to extend the closing of the Escrow on a month-to-month basis. Therefore, there is an insufficient basis for this Court to find that the Amended Agreement is ambiguous for purposes of requiring the consideration of extrinsic evidence.

Casa relies on *Green v. Sprague Ranches*, 170 Cal.App.2d 687, 339 P.2d 607 (1959) in support of its contention that the Agreement is ambiguous and therefore extrinsic evidence should have been considered in determining the intent of the parties. In *Green*, the plaintiffs had leased certain farm land to the defendants. The parties subsequently modified the lease which among other provisions provided the defendants with a right of first refusal on the purchase of the leased property. The parties then entered into a further modification of the lease which gave the defendants a fixed price option to purchase the property for the price of $133,000 dollars.

After these modifications to the lease, plaintiffs notified defendants that they had received and accepted an offer for the property of $150,000 dollars. The defendants then gave written notice to the plaintiffs that they intended to exercise their right of purchase under the fixed price option. Plaintiffs then filed an action for declaratory relief and reformation. By the time the trial approached, the sole issue remaining was whether or not the fixed price option had been extinguished by the plaintiff's giving notice pursuant to the right of first refusal as contained in the earlier modification of the lease. The trial court refused to consider extrinsic evidence and held that the defendants had no right to purchase the property under the fixed price option. The defendants appealed contending that the trial court had erred in construing the documents such that the right under the fixed price option was extinguished. The defendants also contended that the right of first refusal and the fixed price option created an ambiguity which should have been resolved through the consideration of the extrinsic evidence offered by the defendants.

The appellate court found that under the particular facts of the case, the intention of the parties would more reasonably appear to have been to create an independent and separate right in the fixed price option

which would not be extinguishable by plaintiffs' exercise of the first refusal clause. The appellate court stated that it was "unable from the writings themselves to support the reasoning of the trial court." *Id.*, 339 P.2d at 691. The appellate court also found that under the particular facts of the case, an ambiguity existed which warranted and demanded the Court's consideration of extrinsic evidence to explain what the parties meant by what they said. *Id.*, 339 P.2d at 693.

While this Court agrees with the principles set forth in *Green*, this Court also finds that the instant case is factually quite different. In this case, Casa's status as a party to an escrow is not at all inconsistent with its status as a lessee with an option to purchase. The Lease was executed to enable Casa to take possession of the Property in anticipation of purchasing the same. Further, Casa's right to extend the closing of the Escrow corresponds and does not conflict with Casa's monthly option to purchase the Property. The Agreement, as amended, and Lease do not constitute a sale of the Property. Instead, they create an escrow in which Casa never performed its concurrent obligation to pay the specified consideration. Consequently, Casa is not the true owner of the Property, and there is no conflict or ambiguity in the written instruments as in *Green*.

Casa also relies on *Venable v. Harmon* 233 Cal.App.2d 297, 43 Cal.Rptr. 490 (1965), for the proposition that under California law, extrinsic evidence is always admissible to prove the true nature of a disguised security agreement. The *Venable* court stated:

> Although there is no clear-cut test for determining when an earnest money contract becomes a security device, the test should be one of intent, which may be evidenced by such factors as the length of time the contract is to run, change in possession of the property, the number of installments to be made under the contract, the per cent [sic] payable under

the contract contrasted to other financing methods which may be involved. *Id.*, at 300–301, 43 Cal.Rptr. 490.

The principles set forth in *Venable* do not change this Court's findings. First, to the extent that the factors enumerated in *Venable* constitute extrinsic evidence which would vary or contradict the terms of an integrated agreement, they would be inadmissible under § 1856(a). Thus, the extrinsic evidence offered by Casa is inadmissible since it would vary or contradict the terms of the Amended Agreement and Lease. Further, this Court finds that most, if not all of the *Venable* factors are addressed in the Amended Agreement and Lease. For example, the intent of the parties is expressed in the Lease, Paragraph 49, the change in possession of the Property is also discussed in the Lease, and the percent payable after the closing of the Escrow is covered by Paragraph 3(b) of the First Amendment. Therefore, the writings between the parties answer the questions which the *Venable* court enumerated. Consideration of these terms, as addressed in the Amended Agreement and Lease, persuades this Court that the status of Casa and Welsh was that of parties to an escrow as opposed to that of mortgagor and mortgagee.

Casa also relies on *In Re Booth* 19 B.R. 53 (Bankr.D.Utah) in arguing that the Amended Agreement and Lease constitute a lien held by Welsh against the Property. In *Booth*, the Bankruptcy Court held that the debtor's contract to buy property from the seller gave rise to a lien in favor of the seller. The debtor paid $1,100 dollars down and the balance of $96,100 dollars was payable over time with interest. The contract further provided that title would be conveyed when performance was completed, and that the debtor would forfeit his interest if he defaulted on the payments. In supporting its holding the *Booth* court stated:

> The contract for deed, where debtor is vendee, benefits the estate more when viewed as a lien than as an executory contract. This is because treatment of

the contract for deed as a lien enlarges the value of the estate and furthers the rehabilitation of the debtor. This treatment likewise makes adequate protection available to creditors.

*Id.,* at 58.

This Court understands the policy expressed in *Booth.* However, the factual scenario here is quite different. In the *Booth* contract for deed, or in the typical security agreement disguised as a lease, one could argue that the parties intended to immediately pass ownership to the buyer. The retention of title by the seller is used to provide the seller with security for the underlying debt. Upon the execution of the Second Amendment and Lease, however, the intent of the parties, as expressed in writing, was not to transfer *ownership* of the Property to Casa. Instead, Casa had the right to purchase the property as long as it continued to pay the consideration set forth in the Second Amendment. Upon failure to make such payments, Casa's rights as lessee and holder of an option to purchase could be terminated by Welsh. This was the expressed, written intent of the parties, and Court cannot change their consequent status as parties to an escrow agreement despite the merit of the policies stated in *Booth.*

### III. *The Bankruptcy Court's Findings of Fact and Conclusions of Law*

Casa asserts that the Bankruptcy Court erred in approving Welsh's proposed findings of fact and conclusions of law, ("findings"). However, this Court is satisfied that the Bankruptcy Judge adequately reviewed and correctly approved the proposed findings. This Court particularly notes handwritten corrections made by the Judge while reviewing the proposed findings. See Appellant's Excerpt of Record, P. 376, and Appellee's Excerpt of Record Pp. 389 and 392.

Casa makes a broad allegation that the findings are substantively incorrect due to the exclusion of extrinsic evidence. However, this Court has determined that the Bankruptcy Court did not err in refusing to consider extrinsic evidence which

would vary or contradict the terms of the Amended Agreement and Lease. Further, Casa makes no specific objection as to the content of the findings despite having had opportunity to do so before the findings were approved. Therefore, this Court is persuaded to find that the Bankruptcy Court properly entered the proposed findings.

### IV. *Conclusion*

For the reasons set forth above, the June 28, 1983 Memorandum Opinion and the August 11, 1983 and the November 14, 1983 findings are AFFIRMED.